Sam PARKER, Appellant,

v.

James Emitt DELCOURE et al., Appellees.

No. 17119.

Court of Civil Appeals of Texas, Fort Worth.

May 15, 1970.

Rehearing Denied June 19, 1970.

Nelson, Montgomery & Robertson, and David Tate, Wichita Falls, for appellant.

Johnson & Browning, and William V. Browning, Wichita Falls, for appellees.

## OPINION

BREWSTER, Justice.

This was a class action brought by Sam Parker, the owner of Lots 11 through 15, inclusive, of Block 6 of Edgemere Heights Addition to the City of Wichita Falls, Texas, against five other owners of lots in said Addition, as representatives for all other persons owning property in the Addition.

The case was tried before the trial court without a jury upon an agreed statement of facts, as provided for by Rule 263, Texas Rules of Civil Procedure.

This statement of facts provided that the plaintiff was seeking a declaratory judgment under Article 2524–1 of Vernon's Ann.Civ.St., declaring that none of his lots in said Addition as above designated are restricted to use for residential purposes only and that such lots can be used to place commercial buildings thereon, and, further, that the size of any buildings constructed thereon not be required to have a minimum of 1600 square feet. Defendants sought a declaration that plaintiff's lots be restricted to residential use only and that the minimum building size of any building placed thereon be declared to be 1600 square feet.

The trial court rendered judgment decreeing in substance that plaintiff's lots shall not be used for commercial buildings. The judgment also contained the following provision: "Any, and all, other relief sought by any of the parties herein is expressly denied." The judgment contained no express adjudication or declaration on the question of whether the minimum size of any buildings placed on plaintiff's lots was required to have at least 1600 square feet in them.

The agreed statement of facts provided that the relevant title history of Edgemere Heights Addition is in substance as set out below.

1. On December 16, 1959, E. C. Stirman, C. H. Snyder and Sam Parker acquired title to all the land that now constitutes Edgemere Heights Addition.

2. On January 11, 1960, the Board of Aldermen of the City of Wichita Falls approved and adopted the dedication plat of this Edgemere Heights Addition which was tendered to them by the three above named owners. Such plat and the approval were filed in the Deed Records of Wichita County on January 20, 1960. No restrictions were filed with the plat.

3. On February 10, 1960, E. C. Stirman conveyed all his interest in the property constituting this Addition to C. H. Snyder and Sam Parker.

4. On May 10, 1960, C. H. Snyder and Sam Parker executed an instrument that was recorded in the Deed Records that same day, by which they attempted to amend certain of the restrictions for Edgemere Heights Addition, that are referred to in paragraph 5 below. This amending instrument was made a part of the agreed statement as Exhibit B thereof.

5. Filed in the deed records on June 1, 1960, were certain restrictions for Edgemere Heights Addition. These were signed by C. H. Snyder, E. C. Stirman and Sam Parker, all acting for the partnership of Snyder, Stirman and Parker, and who were there recited to be the then owners of all the Addition. This instrument was attached to the agreed statement of facts as Exhibit C, and made a part thereof. It did not bear any date purporting to be the date of execution. It did have a recitation that E. C. Stirman appeared before a notary in connection with it on June 1, 1960, same being the date it was filed for record. The agreed statement of facts makes it clear, however, that these restrictions were the ones sought to be

amended by the instrument executed by Snyder and Parker on May 10, 1960, by the instrument identified under No. 4 above.

6. No sale or conveyance of any part of Edgemere Heights Addition was made by any of the owners thereof prior to August 5, 1960, other than a lot deeded to the City of Wichita Falls for easement purposes.

7. After August 5, 1960, the owners of the Addition sold and conveyed many lots in the Addition to others.

The parts of the instrument (Exhibit C to the agreed statement) creating the restrictions for this Addition that are material to this decision will be quoted below:

" * * * all property in said Addition (referring to Edgemere Heights) shall be conveyed subject to the hereinafter set out covenants and restrictions upon the use and ownership of said property * * *

"1. LAND, USE AND BUILDING TYPE: No lot shall be used except for residential purposes. No building shall be moved in upon any of said lots. No garage larger than a two-car-garage shall be erected on said premises, and servant houses shall not be permitted upon said premises except for the servants of the owner.

"2. ARCHITECTURAL CONTROL: (not material)

"3. ARCHITECTURAL CONTROL COMMITTEE: (not material)

"4. DWELLING, QUALITY AND SIZE: ´It being the intention and purpose of the *conenant* to assure that all dwellings shall be of a quality of workmanship and materials substantially the same or better than that which can be produced on the date these covenants are recorded at the minimum cost stated herein for the minimum permitted dwelling size. The *grown* floor area of the main structure, exclusive of one-story open porches and garages. shall be not less than *than* 2000 square feet for a one-story dwelling, except lots 11 through 15 in block 6 may have a minimum of 1600 square feet."

None of the other provisions in this instrument that creates the restrictions are in any way related to the problem involved here. Such instrument does have 14 numbered paragraphs in it and 12 of them bear headings in capital letters such as those indicated above in front of paragraphs 1 and 4. Such headings generally designate the subject matter covered by the particular paragraph that follows the heading.

The May 10, 1960, instrument by which the then owners of all the lots in this Addition attempted to amend the restrictions referred to under paragraph No. 5 above is as follows:

"AMEND REST.
"6071

"EDGEMERE HEIGHTS

"STATE OF TEXAS
"COUNTY OF WICHITA } KNOW ALL MEN BY THESE PRESENTS:

"That whereas, C. H. Snyder, E. C. Stirman and Sam Parker placed certain restrictions and conditions against what is known as Edgemere-Heights, an addition to the City of Wichita Falls, Texas, which restrictions were duly approved by the Board of Aldermen of the City of Wichita Falls, Texas, and have been duly filed for record with the County Clerk of Wichita County, Texas.

"And whereas, C. H. Snyder and Sam Parker, the owners of Edgemere-Heights,

desire to amend paragraph No. 4 of said restrictions in the following manner, to-wit: that is where said restrictions recite that the ground floor area of the main structure, exclusive of one story open porches and garages, shall not be less than 2000 square feet for a one story dwelling, shall be amended to read not less than 1500 square feet for the one story dwellings, and wherein said paragraph No. 4 requires that Lots Nos. 11 to 15 in Block No. 6 may have a minimum of 1600 square feet shall now be amended to permit the erection of commercial bldgs thereon, if desired.

"All other restrictions shall remain the same.

"Witness our hands this the 10th day of May, 1960.
"/s/ Sam Parker

"/s/ C. H. Snyder"

We reverse and render.

Before selling and conveying any lot in Edgemere Heights Addition the then owners of all such lots executed the instrument imposing the restrictions on such Addition and also executed the instrument above referred to by which they attempted to amend such restrictions.

Both of these instruments were recorded in the Deed Records of the applicable county before any of the lots were ever sold by such owners.

■ There is no question but what the owners of the Addition had the right to restrict the use of the lots in the Addition to use for residential purposes, only, and then later, before selling any of such lots, to amend the instrument creating the restrictions so as to permit the erection of commercial buildings on Lots 11 to 15 in Block 6 of such Addition, if desired.

■ A landowner can impose such restrictions as he sees fit on his land as long as they are not against public policy and are not otherwise illegal. Bein v. McPhaul, 357 S.W.2d 420 (Amarillo Civ.App., 1962,

no writ hist.). As long as he still owns all the lots in the Addition he can restrict the Addition. He can also turn right around and abrogate such restrictions entirely, if he sees fit, or modify them to any degree. These are rights that go with being the owner of property. Hill v. Trigg, 286 S.W. 182 (Tex.Comm.App., 1926).

In deciding the questions presented in this case a court is called on to construe the two instruments that were placed of record by the owners of the Addition, namely, (1) the instrument first restricting the Addition, and (2) the May 10, 1960, amendment of such restrictions.

■ In construing such instruments it is the duty of the court to ascertain the intent of the parties from the instruments as a whole. Brite v. Gray, 377 S.W.2d 223 (Beaumont Civ.App., 1964, no writ hist.). A court must construe restrictions in the light of the obvious intent of the plan for development of the Addition. Kayem v. Stuckey, 383 S.W.2d 227 (Waco Civ.App., 1964, ref., n. r. e.).

The following is from Universal C. I. T. Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154 (1951), at p. 157 and 158:

"In the interpretation of contracts, whether they be ambiguous in the sense that that term is here defined or simply contain language of doubtful meaning, the primary concern of the courts is to ascertain and to give effect to the true intention of the parties. To achieve this object the courts will examine and consider the entire writing, seeking as best they can to harmonize and to give effect to all the provisions of the contract so that none will be rendered meaningless."

In this case after the amendment to the restrictions became effective we have paragraph No. 1 of such restrictions providing: "No lot shall be used except for residential purposes." After such amendment paragraph No. 4 contained a provision providing in substance that paragraph No. 4 would be amended to provide that com-

mercial buildings may be erected on Lots 11 to 15 in Block 6 of the Addition, if desired. Such amendment also further provided that, "All other restrictions shall remain the same."

■ These provisions, after the amendment, appear to be in conflict, but when a court applies the rules of interpretation set out in the Universal C. I. T. Credit Corporation case, supra, and harmonizes the provisions of both instruments in an effort to give effect to the intent of the parties and to all the provisions of the instruments so that none will be rendered meaningless, we can only come out with one conclusion, namely: the effect of the existing restrictions on the Addition, including the amendment, was to restrict the use of all lots in the Addition to residential use, except Lots 11 to 15, inclusive, of Block 6. On those five (5) designated lots commercial buildings can be constructed thereon, if desired, by the owner.

It appears to us that it was clearly the intent of the owner of the Addition, after his amendment, that the lots in the Addition be restricted as indicated in the last paragraph above. This construction harmonizes and gives reasonable effect to all language used in the two instruments.

■ Another rule of construction that also applies here is the rule that specific language of an instrument will control its general terms. Kothe v. Harris County Flood Control Dist., 306 S.W.2d 390 (Houston Civ.App., 1957, no writ hist.).

Here the provision in paragraph 1 of the restrictions provides in substance that no lot in the Addition shall be used except for residential purposes. More specific language is contained in paragraph No. 4 by virtue of the amendment, it providing in substance that commercial buildings may be built on Lots 11 to 15 of Block 6 of the Addition, if desired.

Under this last mentioned rule of construction, the specific language of paragraph No. 4, put there by the amendment, controls the use to which plaintiff's lots in question can be put.

Universal C.I.T. Credit Corp. v. Daniel, supra, 243 S.W.2d at p. 157 says: "In other words, if after applying established rules of interpretation to the contract * * * only one reasonable meaning clearly emerges it is not ambiguous."

The two instruments that we have for construction here are not ambiguous under that holding.

■ We do not believe that the fact that the amending instrument was recorded in the Deed Records before the instrument that it was intended to amend was recorded changes the result we express above under the facts of this case. Both such instruments were executed and recorded in the Deed Records by the owners of all lots in the Addition before any of the other lots were sold. It was also stipulated that even though the amended restrictions were filed first, that they were in fact executed by the owners in an attempt to amend the restrictions imposed on the lots by the other instrument and the provisions of the amending instrument make that fact obvious.

These amended restrictions which provided that commercial buildings can be erected on plaintiff's lots that are involved here were recorded in the Deed Records of the county before any lots were sold and all defendants have, after such recordation, purchased their lots with constructive notice of such amendments.

One question remaining to be decided is whether the applicable restrictions require buildings placed on plaintiff's Lots 11 to 15, inclusive, of Block 6 of the Addition to have a minimum building size of 1600 square feet.

Defendants argue that this question was not raised by plaintiff's pleadings and was therefore not in the case at all and should not be considered by this Court.

We overrule defendants' contention thus made because since this case was tried on an agreed statement of facts under Rule 263, T. R. C. P., all issues with regard to the peadings are immaterial. Gonzales v. Farmers Insurance Exchange, 399 S.W.2d 888 (Eastland Civ.App., 1965, ref., n.r.e.); and Banker v. Jefferson County Water Control & I. Dist., 277 S.W.2d 130 (Beaumont Civ.App., 1955, ref., n.r.e.).

On an appeal in a case such as this there is no statement of facts and the transcript here consists solely of the agreed statement on which the case was tried below, the trial court's judgment, the appeal bond, the cost bill and the clerk's certificate.

The pleadings in the case have not been placed in the transcript before us. This was proper where the case was tried on an agreed statement. We will never know their contents.

The parties to the suit have agreed that plaintiff by this suit is seeking a declaratory judgment decreeing that the size of any buildings constructed on Lots 11 to 15, inclusive, in Block 6 of the Addition is not required to have a minimum of 1600 square feet. The parties and this Court are bound by this agreement and we are required to pass on this point. Patton v. Wilson, 220 S.W.2d 184 (San Antonio Civ.App., 1949, ref., n.r.e.).

Webster's New International Dictionary defines the word "Amend" to mean "to change" or "reform."

The amending instrument executed by the owners of all lots in the Addition on May 10, 1960, provided: " * * * and wherein said paragraph No. 4 (of the restrictions) requires that Lots Nos. 11 to 15 in Block No. 6 may have a minimum of 1600 square feet shall now be amended to permit the erection of commercial bldgs thereon, if desired."

We conclude that the owners by this particular verbiage when construed with the rest of the two instruments involved here intended to change that particular part of paragraph 4 of the restrictions that provided for a minimum floor space for dwellings constructed on these lots 11 to 15, inclusive, of Block 6 by deleting the minimum floor space requirement in so far as those particular lots are concerned, and substituting therefor in paragraph 4 the provision that commercial buildings may be erected on those designated lots, if desired.

All minimum floor space provisions in both the applicable instruments related to the size of dwelling houses placed on the lots in the Addition. The amendment makes it obvious that when the owner changed the restrictions on Lots 11 to 15 of Block 6 from Residential to Commercial use that he intended to and did do away with the minimum floor space requirements as to these particular lots.

The questions presented to the trial court and to this Court on the appeal are questions of construing unambiguous written instruments. These are law questions to be determined by a court and not by a jury. See 13 Tex. Jur.2d 263, § 110, and the many cases there cited.

We therefore reverse the trial court's judgment and hereby render judgment declaring that the applicable and controlling restrictions governing the use which can be made of Lots 11 to 15, inclusive, Block 6 of Edgemere Heights Addition to the City of Wichita Falls, Wichita County, Texas, permit commercial buildings to be constructed on such lots, if desired, and do not restrict the use of those five (5) lots to residential purposes only.

We further render judgment declaring that the controlling restrictions governing those five lots do not provide for a minimum floor space building size for buildings built on those five lots.

Costs are taxed against appellees.