**MAXUS EXPLORATION COMPANY,**
**f/k/a Diamond Shamrock**
**Exploration Company, Appellant,**

v.

**MORAN BROS., INC., Appellee.**

No. 05–88–00644–CV.

Court of Appeals of Texas,
Dallas.

May 8, 1989.

Rehearing Denied July 17, 1989.

John H. Marks, Jr., Dallas, Harlow Sprouse, Thomas R. Dixon, Jr., Kevin P. Parker, Amarillo, for appellant.

Michael V. Powell, Cynthia Keely Timms, Karen F. Gray, Dallas, for appellee.

Before ENOCH, C.J., and ASHWORTH[1] and STEPHENS[2], JJ.

ENOCH, Chief Justice.

This is an appeal from a summary judgment granted to Moran Brothers, Inc. (Moran) against Maxus Exploration Company, formerly known as Diamond Shamrock Exploration Company (Diamond Shamrock). The judgment required Diamond Shamrock to indemnify Moran for claims by Keith Boydstun, a third party, who was injured while using equipment owned by Moran at an oil well drilling site operated by Moran on behalf of Diamond Shamrock. Diamond Shamrock, in six points of error, claims that: (1) the trial court erred in applying Kansas law; (2) the indemnity provisions were void under Texas law; (3) even if these provisions were valid, Moran was not entitled to indemnity for injuries to its own invitees; and (4) the trial court erred in admitting certain summary judgment evidence. For the reasons stated, we affirm the trial court's judgment.

### Facts

Diamond Shamrock and Moran executed a "daywork drilling" contract for the purpose of drilling an oil well in Meade County, Kansas. In July 1980, Keith Boydstun was seriously injured at the well site while using Moran's equipment to unload tools from his truck. Boydstun was an employee of Wiggins Oil Tool Company which was a contractor of Diamond Shamrock.

Boydstun filed a lawsuit against Moran. Moran joined Diamond Shamrock by way of a cross-action, seeking indemnity under the provisions of the parties' daywork drilling contract. Pursuant to the terms of an agreement executed by Diamond Shamrock and Moran, Diamond Shamrock and its insurance company, Aetna, defended Moran in Boydstun's lawsuit. Diamond Shamrock and Moran reserved their rights to seek indemnity or other damages from each other.

The jury found Moran negligent and awarded damages. In a settlement agreement between Boydstun, Moran, and Diamond Shamrock, the two companies agreed to each pay approximately half of Boydstun's judgment. Each company reserved its right to reclaim its half from the other.

When the settlement was complete, Diamond Shamrock commenced this action in Texas seeking a declaratory judgment that its contractual indemnity obligation was void. Moran counterclaimed seeking indemnity from Diamond Shamrock. Each party filed for summary judgment. The trial court granted summary judgment in favor of Moran and denied Diamond Shamrock's motion.

### Choice of Law

Diamond Shamrock's first point of error urges that the trial court erred in its choice

---

1. The Honorable Clyde R. Ashworth, Justice, retired, Court of Appeals, Second District of Texas at Fort Worth, sitting by assignment.

2. The Honorable Bill J. Stephens, Justice, retired, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

of Kansas law as the law applicable to this case. This point is relevant to Diamond Shamrock's claim that should Texas law apply then under article 2212b of the Texas Revised Civil Statutes (now chapter 127 of the Civil Practice and Remedies Code) the indemnity provisions under which it was found liable would be void. In addition, Diamond Shamrock asserts that the indemnity provisions do not meet the "express negligence" test required under Texas case law. Because of our disposition of these latter two contentions, we need not address the choice of law point of error, but rather, for the purposes of this opinion, assume without deciding that Texas law should control the disposition of the issues presented in this appeal.

## Validity of Indemnity Provisions
### Article 2212b

In point of error two, Diamond Shamrock argues that the indemnity provisions in its contract with Moran are against Texas' public policy because the agreement lacked a clause required by statute that its indemnity obligation would be supported by insurance. Sections 1 and 2 of article 2212b provide:

Sec. 1. The legislature finds that an inequity is fostered on certain contractors by the indemnity provisions contained in some agreements pertaining to wells for oil, gas, or water, or mines for other minerals. It is the intent of the legislature and the purpose of this Act to declare provisions for indemnity in certain agreements where there is negligence attributable to the indemnitee to be against the public policy of the State of Texas.

Sec. 2. Except as specified in Section 4 of this Act, a[n] ... agreement ... pertaining to a well for oil ... is void and unenforceable if it purports to indemnify the indemnitee against loss or liability for claims arising from ... the ... negligence of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.

TEX.REV.CIV.STAT.ANN. art. 2212b(1), (2) (Vernon 1973). Article 2212b(4)(c) provides:

The provisions of Section 2 of this Act shall not apply to any agreement providing for indemnity with respect to claims for personal injury or death to indemnitor's employees or agents or the employees or agents of indemnitor's subcontractors if the parties agree in writing that such indemnity obligation *will be supported by available liability coverage to be furnished by indemnitor;*

TEX.REV.CIV.STAT.ANN. art. 2212b(4)(c) (Vernon 1973) (emphasis added).

Diamond Shamrock contends that the exception to 2212b was not met in this case because its agreement with Moran gave it the option to self-insure its obligation. Moran responds that the statute only requires insurance *coverage* and not an insurance *policy*. Therefore, self-insurance satisfies the statute. In addition, Moran points out that the inch-thick stack of insurance policies introduced into evidence by Diamond Shamrock shows that Diamond Shamrock did, in fact, provide "insurance coverage" as required by the statute by the purchase of an insurance policy.

The indemnity agreement provision of the contract provides that "contractor and operator hereby agree [that the indemnity obligations] will be supported by available liability insurance under which the insurer has no right of subrogation against the indemnitee, or voluntarily self-insured, in whole or in part." The question then is whether allowing for self-insurance violates the section 4(c) exception of article 2212 which requires indemnity obligations to include provisions for "liability insurance coverage."

"Self-insurance" has a distinct meaning: The practice of setting aside a fund to meet losses instead of insuring against such through insurance. A common practice of business is to self-insure up to a certain amount, and then to cover any excess with insurance.

*Black's Law Dictionary* 1220 (5th ed. 1979). In a self-insurance situation, the company is acting as its own insurance

company. Instead of paying premiums, it places money in a designated account to be used only to pay for the damage protected against. *See State v. Sun Refining & Mktg., Inc.*, 740 S.W.2d 552 (Tex.App.—Austin 1987, writ denied).

■ We read section 4(c) not to prohibit a plan of self-insurance, but only to require that the parties agree in writing to support the indemnity agreement with insurance coverage.[3] *See, e.g.*, TEX.REV.CIV.STAT. ANN. art. 6701h, § 5 (Vernon 1977); *Texas Department of Public Safety v. Smith*, 419 S.W.2d 884 (Tex.Civ.App.—Houston [1st Dist.] 1967, writ ref'd n.r.e.).

■ Diamond Shamrock goes on to argue that under section 4(c) it is only liable for $300,000. Section 4(c) provides "but in no event shall said insurance be *required* in an amount in excess of twelve times State basic limits for bodily injury, approved by the Board of Insurance Commissioners...." (Emphasis added.) We read this statute to mean that a party cannot be required to provide more insurance coverage than twelve times the amount allowed by the Insurance Board. It does not prohibit Diamond Shamrock from voluntarily providing more insurance. *See Brushar v. Mobil Oil Corp.*, 626 F.Supp. 434, 437 (D.N.M.1984); *Lirette v. Union Texas Petroleum Corp.*, 467 So.2d 29, 34 (La.App. 1985).

The agreement between Diamond Shamrock and Moran for a higher amount is evidenced by paragraphs 14.8 and 14.9 of the contract providing that *both* parties "voluntarily and mutually assumed" the obligation of indemnity without limitation. The purpose of the section 4(c) limit is to protect a weaker party from being coerced by a stronger party into providing high indemnity protection. TEX.REV.CIV. STAT.ANN. art. 2212b § 1 (Vernon 1973). There is nothing in the statute preventing the indemnitor from voluntarily providing more insurance than required. Diamond Shamrock makes no argument that its portion of the indemnity agreement was not otherwise voluntarily given nor are we pointed to anywhere in the record where evidence supports such an argument. Moran's claim is not limited to $300,000.

We hold that the indemnity provisions in the daywork drilling contract met the requirements of article 2212b in that the parties agreed in writing that Diamond Shamrock would support its obligation by liability coverage. Therefore, the indemnity provisions are not void. Additionally, Moran's claim is not limited to $300,000. Point of error two is overruled.

### Express Negligence

■ Under point of error three, Diamond Shamrock asserts that even if not void, for the indemnity provision to be enforceable, it must meet the "express negligence" test as set out by the Texas Supreme Court in *Ethyl Corp. v. Daniel Construction Co.*, 725 S.W.2d 705 (Tex.1987).[4] In *Ethyl*, the Texas Supreme Court adopted the express negligence test and articulated this standard as follows:

> The express negligence doctrine provides that parties seeking to indemnify the indemnitee from the consequences of its own negligence must express that intent in specific terms. Under the doctrine of express negligence, the intent of the parties must be specifically stated within the four corners of the contract.

---

3. As pointed out, Diamond Shamrock actually provided insurance coverage by a policy and not by self-insurance. With regard to the insurance policy, Diamond Shamrock asserts that because it contained a Million Dollar deductible provision this was tantamount to no insurance. The resolution of this issue is immaterial to the disposition of this appeal. Article 2212b references only that there must be a *written agreement* that insurance coverage be provided. Article 2212b does not void an indemnity provision if, in fact, insurance coverage does not exist.

4. In point of error four, Diamond Shamrock contends, in the alternative, that if Kansas law applies (see point of error one) then the appropriate standard would be "clear and unequivocal" expression of intent to cover indemnitee's own negligence. Because of our disposition under the more stringent Texas standard of "express negligence," we need not address point of error four. *See Eastman Kodak Co. v. Exxon Corp.*, 603 S.W.2d 208, 211 (Tex.1980).

*Ethyl,* 725 S.W.2d at 708. Therefore, for an indemnity agreement to be enforceable, three elements must exist: (1) the intent of the parties must be clear; (2) it must be set forth within the four corners of the agreement; and (3) the specific intent of the parties must be expressed. *Id.; see also Adams Resources Exploration Corp. v. Resource Drilling, Inc.,* 761 S.W.2d 63 (Tex.App.—Houston [14th Dist.] 1988, writ dism'd).

The provisions at issue are as follows:
14. RESPONSIBILITY FOR LOSS OR DAMAGE:

\* \* \* \* \* \*

14.8 *Contractor's Indemnification of Operator:* Contractor [Moran] agrees to protect, defend, indemnify, and save Operator [Shamrock] and its joint owners harmless from and against all claims, demands, and causes of action of every kind and character, *without limit and without regard to the cause or causes thereof or the negligence of any party or parties,* arising in connection herewith in favor of Contractor's employees or Contractor's subcontractors or their employees, or Contractor's invitees, on account of bodily injury, death or damage to property. If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnities voluntarily and mutually assumed under paragraph 14.8 (which Contractor and Operator hereby agree will be supported either by available liability insurance, under which the insurer has no right of subrogation against the indemnitees, or voluntarily self-insured, in part or whole) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under such law.

14.9 *Operator's Indemnification of Contractor:* Operator [Shamrock] agrees to protect, defend, indemnify, and save Contractor [Moran] harmless from and against all claims, demands, and causes of action of every kind and character, *without limit and without regard*

to the cause or causes thereof or the negligence of any party or parties, arising in connection herewith in favor of Operator's employees or Operator's contractors or their employees, or Operator's invitees, other than those parties identified in paragraph 14.8 on account of bodily injury, death or damage to property. If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnities voluntarily and mutually assured under paragraph 14.9 (which Contractor and Operator hereby agree will be supported either by available liability insurance, under which the insurer has no right of subrogation against the indemnitee, or voluntarily self-insured, in part or whole) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under such law.

\* \* \* \* \* \*

14.13 Indemnity Obligation: Except as otherwise expressly limited herein, *it is the intent of parties hereto that all indemnity obligations and/or liabilities assumed by such parties under terms of this Contract, including, without limitation, paragraphs 14.1 through 14.12 hereof, be without limit and without regard to the cause or causes thereof (including pre-existing conditions),* the unseaworthiness of any vessel or vessels, strict liability, *or the negligence of any party or parties, whether such negligence be sole, joint or concurrent, active or passive.*

(Emphasis added.) Diamond Shamrock argues that a specific reference to the negligence of the indemnitee is required. Moran responds that the *mutual* indemnity provisions of the contract meet the "express negligence" test. It points out that the plan of the contract was to divide the responsibility for the injuries to persons at the well site on the basis of the injured person's relationship to the operator or contractor, and not on the basis of fault. Moran further notes the existence of the

phrase "without regard to the cause or causes thereof or the negligence of any party or parties ..." in each of paragraphs 14.8 and 14.9, as well as the entirety of paragraph 14.13.[5]

Two cases have upheld indemnity agreements almost identical to the one at bar. *Adams Resources Exploration Corp.*, 761 S.W.2d at 65; *Dupont v. TXO Production Corp.*, 663 F.Supp. 56 (E.D.Tex.1987).[6] In both these cases, the parties mutually agreed to indemnify the other "without limit and without regard to the cause or causes thereof or the negligence of any party or parties." In both cases, the parties set out in the section entitled "Indemnity Obligation" that the obligation was "without regard to the cause or causes thereof ... or the negligence of any party or parties, whether such negligence be sole, joint or concurrent, active or passive." Both courts held that each party specifically agreed to indemnify the other against all claims, no matter the cause of the incident or who was negligent, be it one of the parties to the contract or another party.

█ We agree with the holdings in *Dupont* and *Adams Resources*. Sections 14.-8, 14.9, and 14.13 of this indemnity agreement clearly provide that each party will indemnify the other against "all claims ... without limits or regard to ... the negligence of any party or parties."

We hold that the indemnity provisions in the daywork drilling contract meet the requirement of the express negligence test and are therefore enforceable. Diamond Shamrock's third point of error is overruled.

### Invitee Status

Diamond Shamrock argues in its fifth point of error that even if the indemnity agreement is enforceable, Moran had no right of indemnity for Moran's invitee. The one difference between the indemnity provisions for Diamond Shamrock and Mor-

an is that paragraph 14.9 provides that Diamond Shamrock will indemnify Moran for Diamond Shamrock's invitees "other than those parties identified in paragraph 14.8." One party identified in paragraph 14.8 is Moran's invitees. Diamond Shamrock points out that the jury instruction in the suit between Moran and Boydstun instructed that Boydstun was a "business visitor" or invitee of Moran. Whether Boydstun was Moran's invitee is immaterial to our resolution of this point of error.

The undisputed evidence showed that Boydstun was an employee of Diamond Shamrock's contractor, Wiggins Oil Tool Company. Such a person is specifically mentioned in the indemnity agreements. Diamond Shamrock agreed to indemnify Moran from all claims from "Operator's employees or Operator's contractors or *their employees.*" Boydstun was at the well site at the direction of Wiggins Oil Tool Company which was under contract with Diamond Shamrock. Boydstun was a party identified in the indemnity provision for whom Diamond Shamrock accepted liability even if Moran was at fault.

An indemnity agreement is construed just like any other contract and is governed by the rules of contract construction. *Ohio Oil Co. v. Smith*, 365 S.W.2d 621, 627 (Tex.1963). One such rule is that specific language of a contract will control its general terms. *O'Connor v. O'Connor*, 694 S.W.2d 152, 155 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.); *Parker v. Delcoure*, 455 S.W.2d 339, 344 (Tex.Civ.App.—Fort Worth 1970, writ ref'd n.r.e.).

Diamond Shamrock's argument that Boydstun could be an employee of a Diamond Shamrock contractor but also Moran's "invitee" for the purposes of indemnity provisions has been rejected. *Blanks v. Murco Drilling Corp.*, 766 F.2d 891, 895 (5th Cir.1985). *Blanks* involved the identical indemnity provisions between Murco and ANR Production Company as involved

---

5. Diamond Shamrock has argued that *Adams v. Spring Valley Const. Co.*, 728 S.W.2d 412 (Tex. App.—Dallas 1987, writ ref'd n.r.e.), is controlling. However, that case did not involve mutual indemnity agreements.

6. We note *Atlantic Richfield Co. v. Petroleum Personnel, Inc.*, 768 S.W.2d 724 (1989).

in the case at bar. Although the trial court found that Blanks was not an "invitee" of Murco, ANR Production argued Blanks was an invitee because he was assisting Murco at the time he was injured. The court, however, held that because Blanks was ANR Production Company's contractor's employee there was no need to determine his relationship to Murco. *Blanks*, 766 F.2d at 894. The more specific term of "Operator's Contractor's employee" controlled over the less specific term of "invitee."

 We agree with the holding in *Blanks*. Because Boydstun was the employee of Diamond Shamrock's contractor, there is no need to determine his relationship to Moran. Even if Boydstun was Moran's invitee, invitee is a less specific term than Diamond Shamrock's contractor's employee. Diamond Shamrock's fifth point of error is overruled.

### Expert Testimony

In its final point of error, Diamond Shamrock argues that the trial court erred in admitting the affidavit of Jack C. Magner as an expert on the daywork drilling contract. Diamond Shamrock contends that since the contract was not ambiguous Magner's affidavit should not have been considered by the court. In addition, it argues that Magner's affidavit had no bearing on the intent of Diamond Shamrock and Moran.

 Assuming there was error, we find that error was harmless to Diamond Shamrock. *See* TEX.R.APP.P. 81. The admission of incompetent evidence will generally not require reversal of a judgment when there is competent evidence to authorize its rendition. *Gillespie v. Gillespie*, 644 S.W.2d 449, 450 (Tex.1982). Magner's affidavit addresses the interpretation of the contract. However, the trial court could have, just as we, used the traditional rules of contract interpretation without resorting to Magner's affidavit. Since the same conclusion could be reached by examining only the language of the contract, consideration of Magner's affidavit was harmless. Dia-

mond Shamrock's sixth point of error is overruled.

The judgment of the trial court is AFFIRMED.