REVISED MAY 29, 1997

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 96-20856

GREENE'S PRESSURE TESTING & RENTALS, INC.,

Plaintiff - Appellant-Cross-Appellee,

VERSUS

FLOURNOY DRILLING COMPANY;
ST. PAUL SURPLUS LINES INSURANCE COMPANY

Defendants - Appellees-Cross-Appellants.

* * *

No. 96-20990

GREENE'S PRESSURE TESTING & RENTALS, INC.,

Plaintiff - Appellant-Cross-Appellee,

VERSUS

FLOURNOY DRILLING COMPANY;
ST. PAUL SURPLUS LINES INSURANCE COMPANY

Defendants - Appellees-Cross-Appellants.

Appeals from the United States District Court
For the Southern District of Texas

May 23, 1997

Before DAVIS, SMITH, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

At issue is the enforceability of an indemnity provision in an oil and gas service contract. The district court held that under Texas law the indemnity provision is enforceable, but only up to $500,000. Both parties appealed. We hold that the indemnity provision is void because it does not conform to the requirements of Texas law, and thus we reverse.

I

In 1991, Greene's Pressure Testing ("Greene") and Flournoy Drilling Co. ("Flournoy") executed a Master Service Contract ("MSC") in which Greene agreed to provide "pressure testing" services on oil drilling rigs operated by Flournoy. Some years later, a Flournoy employee died from a pressure-testing accident on a Flournoy drilling rig. The decedent's family sued Greene and Flournoy in Texas state court. Pursuant to the MSC's indemnity provision, Greene demanded that Flournoy and Flournoy's insurer, St. Paul Surplus Lines Insurance Co. ("St. Paul"), defend and indemnify Greene. Flournoy and St. Paul refused. Shortly thereafter, Greene and Flournoy, through their insurers, each paid the family $1.75 million to settle the family's suit. Pursuant to the settlement agreement, Greene, Flournoy, and St. Paul reserved their rights to litigate among themselves the indemnity and

coverage issues.

Greene then sued Flournoy and St. Paul for declaratory judgment, see 28 U.S.C. § 2201, and moved for summary judgment. The district court denied Greene's motion, holding, *inter alia*, that: (1) the indemnity provision was dependent upon other contractual provisions in the MSC, and therefore that a breach of contract by Greene could cut off its right to indemnity from Flournoy; and (2) the indemnity provision is enforceable only up to $500,000 under the Texas Oilfield Anti-Indemnity Act. The district court's summary judgment order was not a final judgment because issues of fact remained as to whether Greene had actually breached the MSC.

Pursuant to both 28 U.S.C. § 1292(b) and Fed. R. Civ. P. 54(b), the district court certified its summary judgment order for interlocutory appeal. As required by § 1292(b), the parties petitioned this Court for leave to appeal the interlocutory order on the two issues of law described in the above paragraph. We granted the petition. Noting that the district court had also certified its summary judgment order pursuant to Fed. R. Civ. P. 54(b), Greene filed a Notice of Appeal in addition to its § 1292(b) petition.

Greene now presents five issues for review, two of which correspond to the issues raised in its § 1292(b) petition. Flournoy and St. Paul not only oppose Greene on the merits of all five issues, but they also contend that the district court abused its discretion by certifying its summary judgment order pursuant to

3

Fed. R. Civ. P. 54(b) and thus maintain that this Court should address only the two issues raised in the § 1292(b) petition.

Because we hold that the district court abused its discretion in certifying its order pursuant to Fed. R. Civ. P. 54(b),[1] we need only address the two issues presented in the § 1292(b) petition. In addition, we hold that the indemnity provision is void because it does not comply with the dictates of the Texas Oilfield Anti-Indemnity Act, and thus we need not determine whether that provision is dependent on other clauses in the MSC.

II

The controlling issue in this case is whether the indemnity agreement contained in the MSC satisfies the requirements of Chapter 127 of the Texas Civil Practice and Remedies Code (the "Texas Oilfield Anti-Indemnity Act" or the "Act"). Tex. Civ. Prac. & Rem. Code Ann. §§ 127.001-.007 (West 1986 & Supp. 1997). The MSC provides:

> 7.2 Subcontractor [Greene] agrees to protect, defend, indemnify and hold harmless Contractor [Flournoy] . . . from and against all claims, demands, and causes of action of every kind and character without limit and without regard to the cause or causes thereof or the negligence or fault (active or passive) of any party or parties including the sole, joint or concurrent negligence of Contractor . . . arising in connection herewith in favor of Subcontractor's employees . . . on account of bodily injury, death or damage to property.
>
> 7.3 Contractor [Flournoy] agrees to protect, defend, indemnify and hold harmless Subcontractor [Greene] . . . from

---

[1]A district court may certify a claim under Rule 54(b) if that claim is disposed of entirely. See Monument Management Ltd. Partnership I v. City of Pearl, 952 F.2d 883, 885 (5th Cir. 1992). In this case, certification was improper because Greene's claim for indemnity was undecided since the issue of Greene's breach of the MSC was unresolved.

4

and against all claims, demands, and causes of action of every kind and character without limit and without regard to the cause or causes thereof or the negligence or fault (active or passive) of any party or parties including the sole, joint or concurrent negligence of Subcontractor . . . arising in connection herewith in favor of Contractor's employees . . . on account of bodily injury, death or damage to property.

As a general rule, the Texas Oilfield Anti-Indemnity Act voids indemnity provisions--such as those found in paragraphs 7.2 and 7.3--that purport to indemnify a party against liability caused by the indemnitee's sole or concurrent negligence and arising from personal injury, death, or property damage. See Tex. Civ. Prac. & Rem. Code Ann. § 127.003 (West 1986). There is, however, a statutory exception that permits indemnity provisions that are supported by liability insurance satisfying the dictates of section 127.005. Section 127.005 provides, in pertinent part:

(a) This chapter does not apply to an agreement that provides for indemnity if the parties agree in writing that the indemnity obligation will be supported by liability insurance coverage to be furnished by the indemnitor subject to the limitations specified in Subsection (b) or (c).

(b) With respect to a mutual indemnity obligation, the indemnity obligation is limited to the extent of the coverage and dollar limits of insurance or qualified self-insurance each party as indemnitor has agreed to provide in equal amounts to the other party as indemnitee.

Id. § 127.005 (West Supp. 1997).[2]

There are two provisions in the MSC dealing with insurance. Paragraph 6.1 requires Greene, but not Flournoy, to obtain $500,000 of insurance, and paragraph 7.4 obligates each party "to support

_____

[2]Subsection 127.005(c) deals with unilateral indemnity obligations, but in the instant case, the parties agree that the MSC contains a mutual indemnity obligation, and thus section 127.005(a)-(b) governs.

[the] indemnity agreement by available liability insurance coverage." Thus, we must determine whether either of these two insurance provisions satisfies the dictates of section 127.005. We conclude that neither provision does.

Paragraph 6.1 of the MSC obligates only Greene, and not Flournoy, to purchase $500,000 of insurance, and thus it cannot be said that *each* party as indemnitor agreed to provide an *equal* amount of insurance to the other party as indemnitee, as required by subsection 127.005(b). Furthermore, the insurance requirement in paragraph 6.1 does not *support* the indemnity obligation, as required by subsection 127.005(a), because that paragraph explicitly states that the insurance obligation contained therein must be maintained "[w]ithout affecting the indemnity obligations or liabilities" of Greene and because that paragraph is found in an entirely different section of the MSC (6.0 Insurance) than are the indemnity provisions (7.0 Indemnity). We thus conclude that the district court erred in holding that the indemnity obligation, pursuant to paragraph 6.1, is enforceable up to $500,000.

Greene's reliance on paragraph 7.4, which obligates each party to support the indemnity agreement with "available liability insurance," is equally unavailing. Subsection 127.005(a) tolerates mutual indemnity agreements so long as the parties agree in writing to support the indemnity obligations with liability insurance subject to the limitations contained in subsection 127.005(b). Subsection 127.005(b) limits a mutual indemnity agreement to the extent of coverage and dollar limits of insurance that each party

6

has "agreed" to provide "in equal amounts" to the other party.  In the instant case, paragraph 7.4 does not require the parties to support the indemnity obligation with "equal" amounts of liability insurance; rather, it compels the parties to support the indemnity agreement with "available" liability insurance.

The difference in meaning between the two terms ("equal" vs. "available") is significant.  Before 1989, subsection 127.005(a) required each party to agree in writing to support the indemnity obligation with "available liability insurance"--exactly the phrasing in paragraph 7.4.[3]  In 1989, however, the Texas legislature specifically rejected this phrasing by amending section 127.005 to require the parties to provide "equal amounts" of liability insurance.  Indeed, Greene admits that it signed an outdated "form" contract that was designed to satisfy the requirements of the pre-1989 Act.[4]  Although we are sympathetic to

---

[3]The pre-1989 statute read as follows:
(a)  This chapter does not apply to an agreement that provides for indemnity with respect to claims for personal injury or death . . . if the parties agree in writing that the indemnity obligation will be supported by *available liability insurance* coverage to be furnished by the indemnitor.
(b)  The indemnity obligation is limited to the extent of the coverage and dollar limits of insurance the indemnitor has agreed to furnish.
(c)  The amount of insurance required may not exceed 12 times the state's basic limits for personal injury, as approved by the State Board of Insurance in accordance with Article 5.15, Insurance Code.
Tex. Civ. Prac. & Rem. Code Ann. § 127.005 (West 1986).

[4]As Flournoy notes, the 1994 International Association of Drilling Contractors ("IADC") form contract now states that the "Operator will, as well, . . . and shall maintain . . . insurance coverage of the same kind and *in the same amount* as is required of the Contractor. . . ." (emphasis added).

7

Greene's position,[5] we cannot hold that paragraph 7.4 satisfies the requirements of the current Anti-Indemnity Act. Paragraph 7.4 contains language that was expressly repudiated by the Texas legislature in 1989, and does not satisfy the current requirement that the parties agree to provide equal amounts of liability insurance.[6]

Greene attempts to overcome the fact that the parties did not agree to provide equal amounts of insurance by relying on two cases: Campbell v. Sonat Offshore Drilling, Inc., 979 F.2d 1115, 1126-27 (5th Cir. 1992); Maxus Exploration v. Moran Bros., Inc., 773 S.W.2d 358, 361 (Tex. App.--Dallas 1989), aff'd on other grounds, 817 S.W.2d 50 (Tex. 1991). Greene cites these cases for the proposition that when an indemnitor voluntarily procures more insurance than is required to support an indemnity obligation, the indemnitee is entitled to the full amount of coverage purchased. In this case, Greene asserts that because Flournoy voluntarily purchased $10 million worth of insurance, it is liable to Greene up to the full $10 million.

---

[5]The following excerpt from paragraph 7.4 demonstrates that the parties attempted to comply with the Texas Oilfield Anti-Indemnity Act, albeit the pre-1989 version:

7.4 . . . In the event that this Contract is subject to the indemnity limitations in Chapter 127 of the Texas Civil Practice and Remedies Code, and so long as such limitations are in force, then it is agreed that the above obligations to indemnify are limited to the extent allowed by law, and each party covenants and agrees to support this indemnity agreement by available liability insurance coverage.

[6]Greene's position is further weakened because the parties in fact purchased *unequal* amounts of insurance: Greene purchased $6 million, and Flournoy purchased $10 million.

Although we agree with Greene that both Campbell and Maxus hold that an indemnitor's voluntary procurement of more insurance than required entitles an indemnitee to the full amount of coverage, Greene's reliance upon Campbell and Maxus is misplaced for two reasons. First, their holdings were based upon subsection 127.005(c) of the pre-1989 Act, which no longer exists in any form. The former subsection 127.005(c) set a specific statutory cap on the dollar amount of insurance that the parties could be *required* to provide, but Campbell and Maxus held that--despite subsection 127.005(c)--an indemnitor could be liable to the indemnitee for more than the statutory cap if the indemnitor *voluntarily* procured insurance over the cap amount. See Campbell, 979 F.2d at 1127; Maxus, 773 S.W.2d at 361. Thus, Campbell and Maxus were specifically premised upon a repealed section of the Act, and their holdings are simply not applicable to this case, which arises under the post-1989 Anti-Indemnity Act.

Second, even if we were to agree that the reasoning of Campbell and Maxus is still viable (*i.e.*, that an indemnitor's voluntary procurement of insurance beyond that agreed upon obligates the indemnitor up to the full amount purchased), such reasoning presupposes that there is a valid agreement in the first instance. In Campbell and Maxus, the indemnity agreements were valid because they were supported by "available" liability insurance, as required by the pre-1989 Act. See Campbell, 979 F.2d at 1118 n.4 (agreeing to support the indemnity obligation with $1,000,000 insurance); Maxus, 773 S.W.2d at 362 (agreeing to

9

support the indemnity obligation with "available liability insurance"); cf. Tex. Civ. Prac. & Rem. Code Ann. § 127.005(a) (West 1986). Only after finding the indemnity agreements valid did these cases determine whether the indemnitor was liable for the full amount of insurance procured. Here, by contrast, the indemnity agreement is void because there was never any agreement to purchase equal amounts of insurance, as is currently required. Cf. Tex. Civ. Prac. & Rem. Code Ann. § 127.005(b) (West Supp. 1997). Simply put, even assuming, *arguendo*, that an indemnitor is liable up to the full dollar amount of insurance purchased, this is true only if there is a valid indemnity agreement. The voluntary procurement of insurance does not transform an otherwise invalid indemnity agreement into a valid one.

III

For the foregoing reasons, we reverse and remand for proceedings consistent with this opinion.

REVERSED and REMANDED.