# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00145-CV

**J. Kelly Gray; Rooster Springs, LP; and Rooster Springs Stable, LP, Appellants**

**v.**

**The Key Ranch at the Polo Club Home Owners Association, Inc., Appellee**

**FROM THE DISTRICT COURT OF HAYS COUNTY, 428TH JUDICIAL DISTRICT
NO. 07-1923, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING**

## MEMORANDUM OPINION

Appellee The Key Ranch at the Polo Club Home Owners Association, Inc. (the "Association") filed suit seeking a declaration that certain easements purportedly granted by appellant Rooster Springs, LP to appellants J. Kelly Gray and Rooster Springs Stable, LP (collectively, "Rooster Springs") were invalid and unenforceable. The Association also asserted a quiet title claim to have the easements set aside and sought attorney's fees. After a bench trial, the trial court ruled in favor of the Association, declaring the easements invalid and ordering that Rooster Springs, LP execute and file releases of the easements in the deed records of the Hays County Clerk's office. Rooster Springs appeals, asserting that the trial court erred in determining that the servient estate was owned by the Association. We will affirm the judgment of the trial court.

**FACTUAL AND PROCEDURAL BACKGROUND**

J. Kelly Gray is the limited partner of Rooster Springs, LP, which developed the Key Ranch subdivision. The Association is a Texas nonprofit corporation established in 2001 for the purpose of administering and enforcing the deed restrictions contained in the Declaration of Covenants, Conditions, and Restrictions For the Key Ranch at the Polo Club (the "Declaration"), which was executed May 18, 1998. The Key Ranch subdivision is a gated residential community containing multi-acre lots that are accessible by three primary roads—Whirlaway, Canonade, and Winning Colors. The dispute giving rise to this appeal concerns Rooster Springs, LP's assertion that it retained ownership of these private roads after it subdivided and sold the lots in the subdivision.

On April 20 and July 7, 2006, Rooster Springs, LP unilaterally, and without obtaining the consent of the Association, executed agreements purporting to give Gray and Rooster Springs Stable, LP perpetual easements over "[a]ll streets and roads within Key Ranch At The Polo Club." The easement agreements referred to the streets and roads as the "easement property" and identified the dominant estate as a tract of land adjacent to the Key Ranch subdivision for which Rooster Springs planned further residential and commercial development. The agreements described the scope and purpose of the easements as follows:

> (1) For providing free and uninterrupted pedestrian and vehicular ingress to and egress from the Dominant Estate Property, to and from U.S. Highway No. 290, across the Easement Property, (2) To allow Grantee to connect the roads and streets located on and serving the Dominant Estate Property to the roads and streets located on the Easement Property, and (3) To allow Grantee to help improve and maintain the private streets known as Canonade and Whirlaway, especially at the connection point where the roads and streets serving the Dominant Estate Property will be connected to the private streets known as Canonade and Whirlaway, including at Grantee's

2

option the right to construct and install ribbon curls or other improvements to the curbing of such private streets.

The following year, the Association filed a declaratory-judgment action seeking to declare the easements invalid. According to the Association, the easements were "fatally defective" because, "at the time of the purported conveyances, Defendant Rooster Springs did not own the property described as easement property in the documents." Noting that the lots in The Key Ranch had been sold subject to the restrictions set forth in the Declaration and the subdivision plats, the Association urged that those instruments had effected a "dedication" of the roads from the developer to the subdivision and subsequent owners of the lots.

At a bench trial, the trial court heard testimony regarding the disputed easements from Gray and a former director of the Association, Robert Harris. Harris stated that the Association had maintained and paid taxes on the common areas of the subdivision, including the streets and roads, ever since Gray and his associates resigned from the Association on April 12, 2006. Gray testified that he sold the property comprising the Key Ranch subdivision to Rooster Springs, LP in order to develop the subdivision; that, at the time the easement agreements were signed, Rooster Springs, LP "probably" owned some lots in the Key Ranch subdivision, but he was not sure which property or properties it owned other than the streets and roads; and that he was not aware of, nor had he executed or intended to execute, any deed transferring ownership of the streets and roads to anyone, including the Association. He further testified that the purpose of the easements was to allow for the development of the tract of land behind the subdivision, in order to avoid having a "landlocked" piece of land and to allow access for future homeowners and water and utilities. On

3

cross-examination, he clarified that the tracts in the back were not actually landlocked, that they could be accessed from Highway 290, and that he was not seeking or asserting an easement of necessity.

The two plats for the Key Ranch subdivision, filed May 12, 1998 and May 24, 1999, respectively, were admitted into evidence at trial. With respect to the roads in the subdivision, the plats state: "In approving this plat by the Commissioners Court of Hays County, Texas, it is understood that all roads shown hereon are private roads and shall remain the property of the subdivision and/or subsequent owners of the property." Further, the plat maps include the following note: "Canonade, Whirlaway, and Winning Colors, are Private Streets, and together comprise all of 'Tract D.'" The May 24, 1999 plat further notes that a fourth street, Silver Charm, "is a Private Street dedicated by this plat and comprises all of Tract M-3." The filed plats are expressly made "subject to any easements and/or restrictions heretofore granted."

The Declaration, which was also in evidence, includes "streets and roadways" as part of the subdivision's "Common Area" and states that "Common Area shall be owned by the Association for the common use and enjoyment of the Owners. Common Area may be designated by Declarant [Rooster Springs, LP] and dedicated or otherwise conveyed to the Association from time to time and at any time." The Declaration further provides that all property within the subdivision shall be held, sold, and conveyed subject to the restrictions contained therein, that these restrictions will run with the land and bind successors of any party who acquires any interest in the property, and that each contract or deed executed thereafter shall conclusively be held to have been executed, delivered, and accepted subject to the restrictions.

4

After the trial concluded, the court found in favor of the Association and declared that the easements were invalid and unenforceable. The court made the following findings of fact:

Prior to purporting to grant easements as described above, Defendant Rooster Springs, LP, had sold all of the lots in The Key Ranch at the Polo Club Subdivision.

The sale of each of the lots in The Key Ranch at the Polo Club Subdivision were sold by reference to recorded plats which set out the streets within the subdivision on which Defendants attempted to establish easements.

Defendant Rooster Springs, LP, did not own the tract containing all streets and roads within The Key Ranch at the Polo Club Subdivision when the easements described hereinabove were transferred.

The trial court also made the following conclusions of law:

The sale of the lots in The Key Ranch at the Polo Club Subdivision by reference to recorded plats constitutes, as between the parties, a dedication of the streets and roads shown thereon.

The easements described hereinabove are invalid because Rooster Springs, LP, did not own the streets and roads within The Key Ranch at the Polo Club Subdivision.

The recorded easements constitute a cloud on the title of the homeowners of The Key Ranch at the Polo Club Subdivision.

Rooster Springs now appeals, arguing that the trial court erred as a matter of law in determining that the roads had been dedicated to the Association because real property cannot be transferred from one private party to another by dedication.

5

## STANDARD OF REVIEW

Our review of Rooster Springs's sole issue involves the interpretation of the Declaration and the plats that it incorporates by reference. We review the trial court's interpretation of the Declaration and the restrictive covenants contained therein by applying general rules of contract construction. *See Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). Whether restrictive covenants are ambiguous is a question of law. *Id.* In construing a restrictive covenant, our primary task is to determine the drafter's intent and to liberally construe the language of the restrictions to give effect to their purposes and intent and to harmonize all of the provisions so that none are rendered meaningless. *See id.*; *Rakowski v. Committee to Protect Clear Creek Vill. Homeowners' Rights*, 252 S.W.3d 673, 676 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). Like a contract, "covenants are 'unambiguous as a matter of law if [they] can be given a definite or certain legal meaning.'" *Pilarcik*, 966 S.W.2d at 478 (quoting *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997)). Courts must examine the covenants as a whole in light of the circumstances present when the parties entered the agreement. *Id.*

To the extent that resolution of Rooster Springs' issue turns on questions of fact, we review the trial court's fact findings for legal and factual sufficiency. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 793-94 (Tex. 2002). In an appeal from a bench trial, the trial court's findings of fact have the same force and dignity as a jury's verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). We review the trial court's conclusions of law de novo, and we will uphold the conclusions if the judgment can be sustained on any legal theory supported by the evidence. *BMC Software Belgium*, 83 S.W.3d at 794. If we determine that a conclusion of law is

6

erroneous, but that the trial court nevertheless rendered the proper judgment, the error does not require reversal. *Id.*

**DISCUSSION**

On appeal, Rooster Springs asserts that the trial court erred in determining that the streets and roads were transferred to the Association, thereby extinguishing Rooster Springs LP's right to grant easements to Rooster Springs Stable, LP and Gray for use of the roads. Specifically, Rooster Springs argues that because real property cannot be transferred from one private party to another through a dedication—the alleged means of conveyance in this case—there was no basis for the trial court to conclude that a valid transfer had occurred.

Rooster Springs is correct that a dedication generally refers to the "donation of land or creation of an easement for public use." Black's Law Dictionary 442 (8th ed. 2007); *see Scott v. Cannon*, 959 S.W.2d 712, 718-19 (Tex. App.—Austin 1998, pet. denied) (listing elements of implied public dedication). The Association responds, however, that the use of the term "dedication" here is not meant to implicate the doctrine of *public* dedication, but rather it refers to how Rooster Springs, LP "defined and consistently used that term in the Declaration" as a way of transferring ownership of the "Common Area" to the Association. In other words, the Association asserts that Rooster Springs, LP, as "Declarant," intended and agreed that the "Common Area," which included streets and roadways, would be "conveyed to the Association *by Plat dedication*" in the manner described in the Declaration. We conclude that the record contains sufficient evidence to support the Association's argument.

"As a rule, parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy." *In re Prudential Ins. Co.*, 148 S.W.3d 124, 129 (Tex. 2004); *see Curlee v. Walker*, 244 S.W. 497, 498 (Tex. 1922). Courts have long recognized that the transfer of property within a subdivision from a developer to the homeowners' association may be effected by the use of dedicatory language in restrictive covenants such as the ones at issue in this case. *See, e.g.*, *Simms v. Lakewood Vill. Prop. Owners Ass'n*, 895 S.W.2d 779, 783-84 (Tex. App.—Corpus Christi 1995, no writ) (construing covenant provision providing for mandatory transfer of common areas to association upon sale of all subdivision lots); *Scoville v. SpringPark Homeowner's Ass'n*, 784 S.W.2d 498, 500 (Tex. App.—Dallas 1990, writ denied) (construing Master Declaration provisions providing for acquisition of common areas by homeowners' association); *see also Raman Chandler Props., L.C. v. Caldwell's Creek Homeowners Ass'n, Inc.*, 178 S.W.3d 384, 394 (Tex. App.—Fort Worth 2005, pet. denied) (recognizing plat dedication of open space common areas to be maintained for benefit of homeowners' association).

The rules of construction that apply in construing contractual provisions are equally applicable in construing covenants and restrictions such as the ones before us. *See Parker v. Delcoure*, 455 S.W.2d 339, 343 (Tex. Civ. App.—Fort Worth 1970, writ ref'd n.r.e.). The intent of the parties must be ascertained from the instruments as a whole. *See Dallas Joint Stock Land Bank v. Harrison*, 156 S.W.2d 963, 967 (Tex. 1941); *Parker*, 455 S.W.2d at 343. Several instruments pertaining to the same purpose, whether executed contemporaneously or at different times, will be read together. *See Board of Ins. Comm'rs v. Great S. Life Ins. Co.*, 239 S.W.2d 803, 809 (Tex. 1951).

Various provisions in the Declaration and the filed plats demonstrate that Rooster Springs, LP as declarant intended to convey the streets and roads of the subdivision to the Association. Most prominent is the language the Association points to in the Declaration regarding the definition of "Common Area" to include "streets and roadways" and the subsequent statement that the "Common Area shall be owned by the Association for the common use and enjoyment of the Owners." Read in conjunction with the plats, which state that the streets and roadways are private and shall remain with the subdivision and/or subsequent owners of the property, the plain language of the Declaration evidences a clear intention to accomplish a conveyance of the streets and roadways to the Association "by Plat dedication or otherwise."

Other provisions support this reading. Under the heading, "Powers and Authority of the Association," for example, the Declaration states that the Association has the right to grant and convey to any person or entity an easement, right-of-way, or mortgage out of, in, on, over, or under any Association property for the purpose of constructing or maintaining roads and streets. It further provides that the Association shall maintain, repair, and replace as necessary all streets and roadways "within or adjacent to the Property." Moreover, the Association is directed to "accept, own, operate and maintain all Common Area which may be conveyed or leased to it by Declarant" and to "pay all real and personal property taxes and assessments levied upon or with respect to any property owned by or leased to the Association."

Taken together, these statements evidence the parties' clear intent that Rooster Springs, LP would at some point convey the streets and roads of the subdivision to the Association

as part of the subdivision's "Common Area."[1] Precisely *when* the parties intended for that conveyance to take effect, on the other hand, is not so clear, giving rise to a fact question that the trial court resolved in favor of the Association. As is apparent from its finding that "Rooster Springs, LP, did not own the streets and roads within The Key Ranch at the Polo Club Subdivision" at the time it purported to grant the easements, the trial court expressly found that such conveyance was accomplished before April 20, 2006—the date the first of the easements was executed. Rooster Springs does not challenge this finding. Indeed, the evidence at trial was undisputed that, as of April 12, 2006, the date Gray and his partners resigned from the Association, the Association began operating, maintaining, and paying taxes on the Common Area—including the streets and roads—pursuant to its obligations with respect to property owned by the Association under the terms of the Declaration. The foregoing constitutes more than a scintilla of evidence to support the trial court's finding that Rooster Springs, LP had transferred the subdivision streets and roads to the Association before April 20, 2006. *See Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998).

As we have noted previously, Rooster Springs' only argument in the appellant's brief is that private parties may not convey property by dedication; they do not challenge the trial court's fact finding that Rooster Springs, LP did not own the property at issue at the relevant time. Because

---

[1] Because we hold the provisions in the Declaration unambiguously express an intent to convey the streets and roads to the Association, we may not look to extrinsic evidence of the parties' intent, such as Gray's contrary testimony at trial. *See National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520-22 (Tex. 1995) (once reviewing court decides that contract is unambiguous, extrinsic evidence may be not be utilized to determine parties' intent). Nonetheless, even if the Declaration were ambiguous in this regard, the result would be the same, because the trial court resolved the conveyance issue in the Association's favor.

the trial court's finding is supported by evidence in the record, it is binding. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986) ("When findings of fact are filed and are unchallenged, as here, they occupy the same position and are entitled to the same weight as the verdict of a jury. They are binding on an appellate court unless the contrary is established as a matter of law, or if there is no evidence to support the finding.").

In light of the foregoing, we hold that the trial court did not err in finding that "Defendant Rooster Springs, LP, did not own the tract containing all streets and roads within The Key Ranch at the Polo Club Subdivision when the easements described hereinabove were transferred." Thus, the court correctly concluded that Rooster Springs, LP was without the authority to grant the purported easements. We overrule Rooster Springs' issue.

## CONCLUSION

The trial court did not err in finding that Rooster Springs, LP did not own the streets and roads in the Key Ranch subdivision on April 20, 2006. Accordingly, because Rooster Springs, LP could not grant easements over such property on or after that date, we affirm the judgment of the trial court declaring the purported easements invalid and unenforceable.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed

Filed:   January 12, 2010