766 F.2d 891
 Harold C. BLANKS, Plaintiff,
v.
MURCO DRILLING CORP., Defendant-Third Party Plaintiff-Appellee,
FEDERAL INSURANCE CO., Third Party Defendant-Appellee,
v.
ANR PRODUCTION CO., New York Marine & General Insurance Co.,
Third Party Defendants-Appellants.
 No. 84-4509.
 United States Court of Appeals,
Fifth Circuit.
 July 29, 1985.
 
 Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Donald L. King, Robert W. Fenet, Grady S. Hurley, New Orleans, La., for appellants.
 Plauche, Smith, Herbert & Nieset, Allen L. Smith, Jr., Lake Charles, La., for appellees.
 Appeal from the United States District Court for the Western District of Louisiana.
 Before WISDOM, WILLIAMS and HILL, Circuit Judges.
 JERRE S. WILLIAMS, Circuit Judge.
 
 
 1
 This diversity action involves the interpretation of the indemnity provisions of a drilling contract as well as certain provisions of an insurance policy purchased in accordance with the drilling contract. ANR Production Company is the owner and operator of the Paul E. Messenger No. 1 oil well located in Natchitoches Parish, Louisiana. ANR contracted in writing with Murco Drilling Corporation to provide a rig and crew for the drilling of the Messenger well. The contract stipulated that ANR as the operator of the well was to provide all mudlogging services. ANR hired Consolidated Laboratories to provide these services at the drilling site. Although there was no written contract between ANR and Consolidated, Consolidated was clearly working directly for ANR and for ANR's benefit. Weekly reports and service tickets for Consolidated's services were signed by an on-site representative of ANR. Consolidated's invoices were presented to ANR for payment.
 
 
 2
 Harold Blanks was a mudlogger employed by Consolidated and assigned to ANR's drilling site. On September 8, 1981, Mr. Blanks was on the Messenger No. 1 drilling site when he noticed that Rodney Elliott, a Murco employee who was attempting to lift a pipe joint with a forklift, was experiencing some difficulty. Elliott shouted to Blanks and motioned for him to approach. Blanks walked over to Elliott and attempted to steady the teetering pipe joint. While grabbing the end of the pipe, Blanks lost his footing and fell to the ground. The pipe section fell on top of him, and he sustained injuries.
 
 
 3
 Blanks filed suit for personal injuries against Murco alleging that the negligence of Murco's employee caused his injuries. The Hartford Accident and Indemnity Company, Consolidated's compensation insurer, intervened in the action to recover compensation paid to Blanks. Murco filed a third-party demand against ANR and New York Marine and General Insurance Co., ANR's insurer, for indemnification. ANR filed a counterclaim against Murco and a third-party demand against Federal Insurance Co., Murco's insurer. The district court bifurcated all third-party claims. At trial on Blanks' negligence claim, the district court found that Murco was 75% at fault, and Blanks 25% at fault, for Blanks' injuries. Blanks was found to have been damaged in the amount of $130,184.73, and Hartford was awarded $25,579.66 out of these damages for compensation paid to Blanks.
 
 
 4
 On the bifurcated indemnification claims, the district court held that ANR was liable to Murco for damages paid to Blanks by virtue of the mutual indemnification provisions of the contract between ANR and Murco. The court found that Blanks was not an "invitee" of Murco within the meaning of the contract and that under the indemnification terms of the contract, ANR had agreed to indemnify Murco for claims paid by Murco to any employee of ANR's contractors or invitees, regardless of fault. Because Blanks was an employee of Consolidated, a contractor of ANR, Murco and their insurer New York Marine, were ordered to indemnify Murco. The district court also found that the Federal Insurance policy purchased by Murco in which ANR was named as an additional insured did not provide coverage for ANR's indemnification to Murco.
 
 
 5
 I. The Drilling Contract.
 
 
 6
 At issue in the drilling contract between ANR and Murco is the interpretation of the so-called "mutual indemnity" provisions. The contract provides for indemnity as follows:
 
 
 7
 14.8 Contractor's [Murco's] Indemnification of Operator [ANR]: Contractor agrees to protect, defend, indemnify, and save Operator ... harmless from and against all claims, demands, and causes of action of every kind and character, without limit and without regard to the cause or causes thereof or the negligence of any party or parties, arising in connection herewith in favor of Contractor's employees or Contractor's subcontractors or their employees, or Contractor's invitees, on account of bodily injury, death or damage to property.
 
 
 8
 14.9 Operator's [ANR's] Indemnification of Contractor [Murco]: Operator agrees to protect, defend, indemnify, and save Contractor harmless from and against all claims, demands, and causes of action of every kind and character, without limit and without regard to the cause or causes thereof or the negligence of any party or parties, arising in connection herewith in favor of Operator's employees or Operator's contractors or their employees, or Operator's invitees, other than those parties identified in paragraph 14.8 on account of bodily injury, death or damage to property.
 
 
 9
 Under this agreement, ANR as the operator of the well, and Murco as the drilling contractor, assumed all liability for injuries sustained by their own employees, statutory or direct, regardless of whose fault caused the injury. These indemnification provisions therefore established that it was the relationship of the parties that determined liability rather than fault.
 
 
 10
 According to p 14.9, ANR was to indemnify Murco for any claims paid by Murco where the individual injured was an employee of a contractor of ANR. Blanks was an employee of Consolidated, a contractor of ANR. Therefore, Blanks was a party identified in p 14.9 for whom ANR had accepted liability even though Murco was determined to be at fault.
 
 
 11
 ANR, however, argues that under the proper construction of the mutual indemnity provisions, liability for Blank's injuries lies with Murco and not with ANR. Under p 14.9, ANR must indemnify Murco for parties identified in that section, other than those parties identified in p 14.8. Under p 14.8, Murco assumes liability for "invitees" of Murco who are injured at the drilling site. ANR argues that Blanks was an "invitee" of Murco and is therefore a party identified in p 14.8. As a party identified in p 14.8, ANR contends that p 14.9 is inapplicable and that p 14.8 is the operative indemnity provision.
 
 
 12
 The district court found that Blanks was not an "invitee" of Murco within the meaning of p 14.8. In Louisiana, an "invitee" is a person who goes onto premises with the expressed or implied invitation of the occupant, on business of the occupant or for their mutual advantage. Arcement v. Southern Pacific Transportation Co., 517 F.2d 729, 733 (5th Cir.1975); Foggin v. General Guaranty Insurance Co., 195 So.2d 636, 641, 250 La. 347 (La.1967); Brown v. State Farm Fire & Casualty Company, 252 So.2d 909, 911 (La.App. 2nd Cir.1971). ANR argues that because Blanks was assisting a Murco employee at the time he was injured, at that moment he became an invitee of Murco. But ANR ignores the fact that invitee status is determined by who invites the injured party onto the premises. Blanks was invited onto the drilling site by ANR through his employee status with Consolidated and was there performing services for ANR's benefit. Blanks and Consolidated were invitees of ANR, as was Murco. 62 Am.Jur.2d, Premises Liability, Sec. 121 (1972). The fact that Blanks assisted a Murco employee, even though his assistance may have been solicited by the Murco employee, has no bearing on his status as an invitee of ANR.
 
 
 13
 ANR cites Paul v. Traders & General Insurance Co., 127 So.2d 801 (La.App. 3rd Cir.1961), to support its position that Blanks became an invitee of Murco by virtue of the fact that a Murco employee solicited Blanks' assistance. In Paul, the plaintiff was visiting a pulpwood loading yard where an employee of the owner solicited his help in untangling pulpwood from a loader. The plaintiff had been a former employee of the owner of the plant and was familiar with the loader equipment. While assisting the employee, the plaintiff's hand became tangled in the loader and was injured. The court held that the plaintiff was an invitee and not a trespasser on the premises because he was performing services that were beneficial to the employer.
 
 
 14
 In Paul, it was necessary to determine the plaintiff's status on the premises in order to define whether the owner of the premises owed a duty of care to the plaintiff during his visit to the plant. By classifying the plaintiff as an invitee, the court accounted for his presence on the premises for purposes of determining that the owner of the plant owed a duty of reasonable care to him. In this case, we need not account for Blanks presence on the drilling site because he was already an invitee of ANR. The standard of care owed by Murco to Blanks in no way related to the legitimacy of Blanks' presence on the drilling site.
 
 
 15
 Because Blanks was not an invitee of Murco, p 14.8 is not the operative indemnity provision. Rather, p 14.9 is the controlling provision. Because Blanks is an employee of ANR's contractor, ANR is liable to Murco under p 14.9 for damages paid to Blanks. We therefore affirm the district court's finding on this issue.[1]
 
 
 16
 II. The Insurance Policy.
 
 
 17
 ANR also contends that pursuant to Murco's insurance policy with Federal Insurance Company, Federal Insurance is obligated to indemnify ANR as an additional insured under Murco's policy for any contractual obligation owed to Murco. Under the drilling contract between Murco and ANR, Murco was required to obtain Comprehensive Public Liability Insurance in the amount of $500,000 and to name ANR as an additional insured under that policy. Murco obtained such coverage with Federal Insurance, and endorsed the policy to contain broad form contractual liability coverage in favor of ANR.
 
 
 18
 The contractual liability insurance coverage portion of the policy states as follows:
 
 
 19
 The company will pay on behalf of insured all sums which the insured, by reason of contractual liability assumed by him under any written contract, shall become legally obligated to pay as damages because of bodily injury.
 
 
 20
 ANR contends that if this Court orders it to indemnify Murco for damages paid to Blanks, such obligation was contractually created pursuant to p 14.9 of the drilling contract, and that the contractual liability provision of the insurance policy therefore creates an obligation on the part of Federal Insurance in favor of ANR.
 
 
 21
 Federal Insurance counters this argument by relying upon the following exclusion to the policy:
 
 
 22
 This insurance does not apply ...
 
 
 23
 (e) to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law.
 
 
 24
 The parties dispute whether this exclusion applies to ANR in relation to the indemnity owed to Murco pursuant to the drilling contract.
 
 
 25
 Our first inquiry is whether under any circumstances ANR may have been liable to Blanks in a manner that would trigger the relevant exclusion under the Federal Insurance policy. Murco argues that ANR may have been liable for workmen's compensation to Blanks because ANR was Blanks' statutory employer.[2] In Louisiana, the statutory employer relationship is created by La.Rev.Stat.Ann. Sec. 23:1061 (West 1964):
 
 
 26
 Where any person (in this section referred to as principal) undertakes to execute any work, which is part of his trade, business or occupation or which he has contracted to perform, and contracts with any person (in this section referred to as a contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependents, any compensation under this chapter which he would have been liable to pay if the employee had been immediately employed by him.
 
 
 27
 This provision must be read along with La.Rev.Stat.Ann. Sec. 23:1032 (West Supp.1985), which provides that any principal who is obligated for compensation benefits is immune from civil liability.
 
 
 28
 The court concluded that ANR was Blanks' statutory employer, and that ANR's potential compensation liability triggered exclusion (e), exonerating Federal Insurance from any obligation to ANR. ANR asserts that Murco cannot rely on the statutory employer argument because Murco provided no evidence of ANR's statutory employer status. We disagree, and find sufficient facts in the record to support the district court's determination that ANR was Blanks' statutory employer.
 
 
 29
 The guidelines for determining whether a principal and a contractor's employee are in a statutory employment relationship are set out in recent cases in Louisiana and in this Circuit. In Lewis v. Exxon, 441 So.2d 192, 197 (La.1983), the Louisiana Supreme Court held that to qualify as a statutory employer under L.R.S. 23:1032, a two-part test must be met. First, the work performed by the claimant must be a part of the principal's "trade, business or occupation". Second, the principal must have been engaged in that trade, business or occupation at the time of the injury. Lewis, 441 So.2d at 197. Similarly, the test has been stated in this Circuit as a determination of whether (1) the activity which occasions the injury of an independent contractor's employee is the type of work customarily done by the principal's own employees; or (2) the employee is injured while engaged in an activity which is an integral part of the principal's business. Blanchard v. Engine & Gas Compressor Services, Inc., 613 F.2d 65, 71 (5th Cir.1980), aff'd after remand, 696 F.2d 395 (1983).
 
 
 30
 The relationship of the parties and the nature of the circumstances surrounding the injury established that the statutory employer requirements were met in this case. ANR was the owner and operator of the Messenger well, and all activities relating to putting the well into operation were within the trade, business and occupation of ANR. Furthermore, at the time Blanks was injured, he was present doing his regular work, and then he assisted a Murco employee who was moving a pipe joint at the well site. These activities were clearly an integral part of ANR's business. Indeed, Blanks' decision not to name ANR as a party in his negligence suit reflects his proper assumption that ANR was his statutory employer. Had Blanks attempted to recover damages against ANR, ANR would undoubtedly have asserted its statutory employer defense.[3]
 
 
 31
 ANR also argues that the fact that Consolidated's insurer paid compensation in full to Blanks precludes classification of ANR as Blanks' statutory employer. If this were true, by the same rationale an injured employee could sue a principal for tort damages once his direct employer paid compensation to him, even though the principal would have qualified as a statutory employer. This absurd result would defeat the purpose of granting immunity to a principal. The correct interpretation of the statutory employer provisions is that the statutory relationship is created at the time the contractual relationship is established between contractors and principals. An employer may be a statutory employer whether or not that employer ever becomes liable for any compensation obligations vis-a-vis a statutory employee. The fact that Hartford Insurance paid compensation to Blanks does not vitiate the statutory employment relationship between Blanks and ANR.
 
 
 32
 We therefore conclude that the district court correctly found that ANR was Blanks' statutory employer. Given ANR's statutory employer status, Federal Insurance properly relied on exclusion (e) of its policy to deny any claim made by ANR for indemnification of ANR's obligation to Murco.[4]
 
 III.
 
 33
 New York Marine & General Insurance Co., ANR's insurer, raises a question as to whether Murco or Federal Insurance Co. has stated a claim against it.[5] New York Marine also appears to suggest that this Court lacks personal jurisdiction over it. These arguments are raised for the first time on appeal. We do not consider issues so raised unless they involve purely legal questions and failure to consider them would result in manifest injustice. See Self v. Blackburn, 751 F.2d 789, 793 (5th Cir.1985); Martinez v. Mathews, 544 F.2d 1233, 1237 (5th Cir.1976). New York Marine could easily have raised these issues below, and we find no manifest injustice resulting from our refusal to consider them here on appeal.
 
 IV.
 
 34
 On the issue of attorneys' fees, ANR does not dispute that as a general rule, an indemnitee may recover from its indemnitors costs and expenses incurred in the defense of the principal claim. See State v. Laconco, Inc., 430 So.2d 1376 (La.App. 1st Cir.1983); Signal Oil & Gas Co. v. Barge W-701, 654 F.2d 1164, 1178 (5th Cir.1981), cert. denied, 455 U.S. 944, 102 S.Ct. 1440, 71 L.Ed.2d 656 (1982). ANR does, however, object to the fact that attorney's fees were awarded to Murco without proof of the fees and costs incurred by Murco.
 
 
 35
 Where attorney's fees are due, the amount awarded must be reasonable and is left to the sound discretion of the district court. Davis v. City of Abbeville, 633 F.2d 1161, 1163 (5th Cir.1981); Wolf v. Frank, 555 F.2d 1213, 1214 (5th Cir.1977). ANR does not claim that the award of attorney's fees was improper, nor that the fees awarded were unreasonable. Nonetheless, ANR urges the case to be remanded on grounds that the district court's failure to consider any evidence relating to the reasonableness of the award was erroneous. Murco had submitted a schedule of fees to ANR for examination. ANR did not object to the reasonableness of attorney's fees requested by Murco; rather ANR simply refused to stipulate as to the fees.
 
 
 36
 Given ANR's own failure to claim that the fees awarded were unreasonable, the district court's award of attorney's fees must stand. There has been no demonstration of abuse of discretion. Accordingly, we affirm the district court's award of attorney's fees to Murco.
 
 
 37
 In summary, we affirm the judgment of the district court holding ANR liable to indemnify its drilling contractor, Murco, for the damages awarded Blanks and his compensation insurer.
 
 
 38
 AFFIRMED.
 
 
 
 [1]
 As ANR points out, this result means that ANR must indemnify Murco for Murco's own negligence. As of September 11, 1981, provisions in drilling contracts allowing such a result have by statute been declared null and void and against public policy. See La.Rev.Stat.Ann. Sec. 9:2780(A), (B) (West.Supp.1985). This action predated the effective date of the Louisiana Oilfield Indemnity Act, 1981 La.Acts, No. 427 Sec. 1, and the mutual indemnity provisions of the contract in question are therefore operative. See Smith v. Shell Oil Co., 746 F.2d 1087 (5th Cir.1984); Blanchard v. Tinsman, 445 So.2d 149 (La.App. 3rd Cir.), writ denied, 448 So.2d 113 (1984)
 
 
 [2]
 The parties appear to agree that the interpretation of exclusion (e) of the policy turns on whether ANR was Blanks' statutory employer. Although the provision is subject to other interpretations, we will accept this as the intent of the parties and proceed with an analysis of the employment relationship between ANR and Blanks
 
 
 [3]
 The existence of a statutory employment relationship is a question of fact to be determined by the totality of the circumstances, and is not automatically established by the mere fact that an injured party was an employee of the principal's contractor. See Penton v. Crown Zellerbach Corp., 699 F.2d 737, 739 (5th Cir.1983). Murco cites three cases for the proposition that the mere contractual relationship between ANR and Consolidated establishes ANR's statutory employer status. See Wells v. State Through Dept. of Highways, 450 So.2d 1027 (La.App. 1st Cir.), writ denied, 458 So.2d 474 (1984); Barnhill v. American Well Service & Salvage, 432 So.2d 917 (La.App. 3d Cir.1983); Fultz v. McDowell, 344 So.2d 410 (La.App. 1st Cir.1977). However, none of these cases presents the employment relationship present in this action. These cases hold that as between a party who contracts to do work, and then subcontracts out part of that work, the contractual relationship alone is sufficient to establish the statutory employment relationship between the general contractor and the subcontractor's employees. Here, ANR is not a general contractor, but is the operator and owner of the Messenger well
 The reason why Louisiana courts have chosen to treat differently cases where a contractor/subcontractor relationship is at issue becomes clear when one examines the purpose for which the Louisiana legislature has chosen to create statutory employer liability. One of the policies behind holding principals liable for injuries sustained by employees of the principal's contractors was to prevent principals from contracting out their work for the purpose of avoiding workmen's compensation liability. Lewis v. Exxon Corp., 441 So.2d 192, 197 (La.1983) (on rehearing); Johnson v. Alexander, 419 So.2d 451, 454 (La.1982). In return, statutory employers received the same benefit as regular employers in that they were granted immunity from tort suits brought by their statutory employees. See La.Rev.Stat.Ann. Sec. 23:1032 & 1061.
 Where a contractor subcontracts work, Louisiana law assumes that the contractor was capable of performing the work, and that he cannot avoid compensation liability merely by delegating his work to a subcontractor. The same assumption does not apply between principals and contractors, however, because one of the principal's reasons for contracting out work may well be that that particular work is not within his expertise or capacity to perform. The more closely linked the services provided by a contractor are with the work normally performed by a principal, the greater the likelihood that the employees of the contractor and the principal will be in a statutory employment relationship. As such, an inquiry into the facts surrounding the nature of the principal's work is necessary to determine whether the statutory relationship exists.
 
 
 [4]
 ANR argues that this court's decision in Ogea v. Loffland Brothers Co., 622 F.2d 186 (5th Cir.1980), controls here with respect to the interpretation of the relevant indemnification and insurance provisions. In Ogea, Phillips Petroleum Co. owned a drilling rig which was operated by Loffland. The plaintiff was an employee of International Hammer, one of Phillips' contractors. Under the mutual indemnification provisions of the drilling contract, Phillips was to indemnify Loffland for damages paid to an employee of Phillips' contractors regardless of fault. The plaintiff collected damages from Loffland for its negligence, and Loffland made a third-party demand against Phillips for indemnification pursuant to the drilling contract
 In Ogea, the Court held that Phillips had an obligation to indemnify Loffland. However, the Court also looked to the language of the drilling contract which provided that Loffland was to acquire insurance naming Phillips as a co-insured for obligations of Phillips in relation to the drilling operations. The Court held that Phillips' indemnification obligation was covered by the insurance policy.
 To this extent, the Ogea presents facts and contractual obligations similar to those in this case. However, the critical distinction is that in Ogea, there was no mention of a workmen's compensation exclusion to the policy as is at issue in this action. Absent such a provision, Ogea cannot be controlling.
 
 
 [5]
 New York Marine argues here for the first time that under Louisiana's Direct Action Statute, La.Rev.Stat.Ann. 22:655 (West 1978), Murco and Federal Insurance have no direct cause of action against New York Marine as ANR's insurer