IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 11, 2008

Charles R. Fulbruge III
Clerk

No. 07-30112

JERAMIE BROWN, et al.,

Plaintiffs,

v.

SEA MAR MANAGEMENT, LLC, ETC; et al.,

Defendants,

SEA MAR MANAGEMENT, LLC, formerly known as Sea Mar Management, Inc.,

Third-Party Plaintiff-Appellee,

v.

OFFSHORE OIL SERVICES, INC.,

Third-Party Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:04-CV-1486

Before REAVLEY, BENAVIDES, and ELROD, Circuit Judges.

PER CURIAM:*

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

This case involves the interpretation and application of a defense and indemnification clause in a maritime contract. Appellant Offshore Oil Services, Inc. ("OOSI") seeks reversal of: (1) the district court's grant of summary judgment in favor of Appellee Sea Mar Management, LLC ("Sea Mar"); and (2) the district court's denial of OOSI's motion for summary judgment. We affirm.

## I. BACKGROUND

Williams Field Services Company ("Williams") hired OOSI to provide utility vessels for painting and sandblasting operations. On March 6, 2002, OOSI and Sea Mar entered into a Master Time Charter Agreement ("Charter Agreement"), pursuant to which OOSI chartered the M/V CAPE COOK from Sea Mar in order to meet Williams's requirements. Williams hired L&L Sandblasting to provide painting and sandblasting services, and employees of L&L Sandblasting worked, ate, and slept aboard the CAPE COOK during offshore operations. Pursuant to the Charter Agreement, Sea Mar provided a master and crew to operate the CAPE COOK. At no time did OOSI have personnel aboard the vessel.

In July 2003, Plaintiff Jeramie Brown, an employee of L&L Sandblasting, injured his ankle while swinging from a fixed platform onto the jump deck of the CAPE COOK. After Brown and his wife brought a personal injury action against Sea Mar and others, Sea Mar filed a Third-Party Complaint against OOSI demanding defense and indemnity pursuant to the Charter Agreement. OOSI and Sea Mar thereafter filed cross-motions for summary judgment on the issue of contractual indemnity. The district court granted Sea Mar's motion and denied OOSI's motion. OOSI appeals.

## II.  STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo.  United States v. Lawrence, 276 F.3d 193, 195 (5th Cir. 2001).  Summary judgment is proper when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

## III.  DISCUSSION

The Charter Agreement contains reciprocal indemnity provisions requiring each party to provide a defense and indemnification for claims made by its "invitees" against the other party.  The operative paragraph provides as follows:

Charterer's [OOSI's] Indemnities.

Neither Owner [Sea Mar] [nor] its officers . . . shall have any responsibility or liability . . . for any injury, illness, disease or death of employees, agents or representatives of Charterer, Charterer's other subcontractors, Charterer's customers or invitees[,] and Charterer shall defend, indemnify, and hold harmless Owner . . . .

The parties dispute whether L&L Sandblasting's employee Brown qualifies as an "invitee" of OOSI.

Because the term "invitee" is not defined in the Charter Agreement, the district court applied the Louisiana common law definition of "invitee" as set forth in Blanks v. Murco Drilling Corp., 766 F.2d 891, 894 (5th Cir. 1985).  The Blanks court defined "invitee" as "a person who goes onto premises with the expressed or implied invitation of the occupant, on business of the occupant or for their mutual advantage."  Id.  OOSI claimed that it was not an "occupant" of the CAPE COOK because its employees were never aboard the vessel and because it turned control of the vessel over to Williams.  OOSI further argued that Brown was Williams's invitee and that Sea Mar obtained the "mutual advantage" from the work Brown performed.  On summary judgment, however,

3

the district court found that Brown was an invitee of OOSI and that OOSI thus owed a defense and indemnity to Sea Mar.

## A. Interpretation of Indemnity Provision

The parties agree that the Charter Agreement controlled the relationship between Sea Mar and OOSI on the date of Brown's alleged accident and that the Charter Agreement is a maritime contract. We apply federal maritime law in interpreting and applying the contract.[1] See Corbitt v. Diamond M. Drilling Co., 654 F.2d 329, 332 (5th Cir. Unit A Aug. 1981) ("The interpretation of an indemnity clause in a maritime contract is ordinarily governed by federal maritime law rather than by state law."). A maritime contract "should be read as a whole and its words given their plain meaning unless the provision is ambiguous." Weathersby v. Conoco Oil Co., 752 F.2d 953, 955 (5th Cir. 1984). Further, indemnity agreements "should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties . . . ." Corbitt, 654 F.2d at 333.

OOSI contends that Brown was not its "invitee" because OOSI was never an "occupant" of the CAPE COOK. In the alternative, OOSI argues that if we find that Brown was an invitee of OOSI, we must find that Brown was also an invitee of Sea Mar, resulting in circular indemnity.

---

[1] Generally, the common law distinction between an invitee and a licensee does not apply in maritime law. See Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 630–32 (1959). The Supreme Court chose to adopt "a single duty of 'exercising reasonable care under the circumstances of each case,' rather than to incorporate in the maritime law the complexities of the common law of invitee and licensee." Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 163 n.10 (1981) (quoting Kermarec, 358 U.S. at 632); see also Smith v. Southern Gulf Marine Co. No. 2, 791 F.2d 416, 419 (5th Cir. 1986). Cases applying these principles concern the duty of care that arises by operation of law in the maritime context, and federal maritime law thus determined the framework of direct tort liability for Brown's injuries. The instant case, however, is solely a contractual indemnity matter. The parties chose to incorporate the concept of an "invitee" to contractually define the circumstances under which the indemnification provision would apply.

## B. Whether Brown is an Invitee of OOSI

OOSI first contends that Brown cannot be its invitee because OOSI was not an "occupant" of the CAPE COOK. See Blanks, 766 F.2d at 894 (defining "invitee" in part as someone invited by the "occupant"). According to OOSI, occupancy requires physical presence on or actual use of the vessel, and OOSI merely chartered the CAPE COOK for Williams's use, immediately turned the vessel over to Williams, and never had any personnel aboard the vessel. Sea Mar, on the other hand, asserts that OOSI was an occupant of the CAPE COOK because as the charterer of the vessel, OOSI had control and command of the vessel, including where the vessel was to go and for what the vessel was to be used.

Blanks does not define "occupant," and Louisiana case law recognizes that the term is "susceptible of different meanings." Reed v. Employers Mut. Cas. Co., 741 So. 2d 1285, 1288 (La. Ct. App. 1999). Consequently, both parties follow Reed in using the customary meaning of "occupant" as set forth in Black's Law Dictionary: "[o]ne who has possessory rights in, or control over, certain property or premises." BLACK'S LAW DICTIONARY 1108 (8th ed. 2004). Contrary to OOSI's assertions, this definition does not require than an occupant actually use or be physically present on the premises. Control of or a possessory right in the property or premises is sufficient.

OOSI contends that it gave up the right to control the vessel when it turned the vessel over to Williams, from whom Sea Mar was taking direction at the time of the alleged injury. Pursuant to the Charter Agreement, however, the vessel was under the control of OOSI; the master of the CAPE COOK was obligated to follow the direction of OOSI and allow on board those persons or parties that OOSI requested.[2] If OOSI instructed Sea Mar to stop taking

---

[2] Section 5(a) of the Charter Agreement provides: "The whole of the vessel shall be at Charterer's [OOSI's] disposal[,] reserving proper and sufficient space for the vessel's master,

5

direction from Williams, Sea Mar was required to comply. As the district court correctly concluded, the CAPE COOK was under the ultimate direction, control, and command of OOSI, which could decide where the vessel went and who could come on board. OOSI was therefore an "occupant" of the vessel.

The Blanks definition of "invitee" also requires an "expressed or implied invitation" and that the invitee be present "on business of the occupant or for their mutual advantage." Blanks, 766 F.2d at 894. Blanks cites Arcement v. S. Pac. Transp. Co., 517 F.2d 729 (5th Cir. 1975), a diversity suit in Louisiana. In Arcement, one man was killed and another injured when their truck crossed a railroad trestle, which collapsed. Id. at 731. The trestle and adjacent wharf had been leased to the National Molasses Company by Southern Pacific, which the court noted retained considerable control over the premises. Id. at 733 n.6. The master of a molasses boat lying alongside Southern Pacific's wharf had requested a delivery of lube oil, and the men were delivering that lube oil on behalf of their employer when they attempted to cross the trestle. Id.

The jury found liability against Southern Pacific, and we held on appeal that the jury properly determined that the men were invitees of Southern Pacific. We explained:

> Neither party contends that [the men] had Southern Pacific's actual invitation (or permission) to drive their truck onto the trestle. . . . Southern Pacific of course argues that it did not benefit from vehicle deliveries made over the trestle to ships tied at the wharf, but even if it did, that the usual inference of invitation was rebutted by its sporadic attempts to keep cars and trucks off the structure. We disagree. Under Louisiana law it is enough to create invitee status (1) that the injured person was never specifically warned to stay off the property and (2) that he was present for some purpose connected

---

officers, crew . . . ." Section 5(c) provides: "The master, although appointed by the Owner, shall be under the general direction of the Charterer [OOSI] in regards to the employment of the vessel, agencies, or other arrangements, and shall not unreasonably refuse any request to undertake operations or carry out any order or direction specified by Charterer."

with the defendant's business. There is no requirement of a tangible, immediate gain by the owner or occupier.

Id. at 734 (emphasis added) (citations and footnote omitted). The Arcement case is helpful to our application of the Louisiana common law definition of "invitee."

Here, OOSI provided the CAPE COOK to Williams specifically so that Williams could use it for painting and sandblasting operations. Brown was an employee of L&L Sandblasting, the company Williams hired to perform painting and sandblasting operations. OOSI therefore extended an implied invitation to—or at the very least did not countermand Williams's invitation to—L&L Sandblasting and its employees to come aboard the CAPE COOK to perform that work. The fact that Williams may have also extended an invitation to Brown does not alter this analysis. In addition, Brown boarded the vessel to the mutual advantage of Brown (and L&L Sandblasting) and OOSI—Brown's work was clearly "connected with" OOSI's business of providing a vessel that would carry painting and sandblasting workers. The fact that Brown's presence may have also been to Williams's advantage and to Sea Mar's advantage likewise does not alter this analysis. Consistent with Arcement, therefore, we hold that the district court correctly found that Brown was an invitee of OOSI.

C. Whether Brown was an Invitee of Sea Mar

OOSI also claims that if Brown is its invitee under the Blanks definition, then Brown is also an invitee of Sea Mar, resulting in circular indemnity. Sea Mar, however, did not hold the right to direct the activities of the vessel. Pursuant to the Charter Agreement, the master of the CAPE COOK was obligated to follow the direction of OOSI and allow on board those persons or parties that OOSI requested. Because Sea Mar did not expressly or impliedly invite Brown or L&L Sandblasting aboard the vessel, there is no basis for

circular indemnity here.  The plaintiff in the underlying case was an invitee of OOSI, not of Sea Mar.

## IV.  CONCLUSION

Because the district court correctly determined that Brown was an invitee of OOSI under the Charter Agreement and that OOSI is contractually obligated to indemnify Sea Mar for defending and settling Brown's claim, its judgment is AFFIRMED.