# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30369

United States Court of Appeals
Fifth Circuit

**FILED**

January 27, 2016

Lyle W. Cayce
Clerk

JAKARTA GROGAN,

   Plaintiff,

v.

W & T OFFSHORE, INCORPORATED,

   Defendant - Appellant

v.

TRITON DIVING SERVICES, L.L.C.,

   Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana

Before HIGGINBOTHAM, OWEN, and ELROD, Circuit Judges.
PATRICK E. HIGGINBOTHAM, Circuit Judge:

  W&T Offshore hired Triton Diving Services to provide a vessel, staff, and equipment for W&T's offshore pipeline project. W&T also hired a safety contractor, Tiger Safety, to provide safety monitoring and training. Tiger personnel came aboard Triton's vessel to furnish these services, and one of them, a technician named Jakarta Grogan, was injured while on board. W&T and Triton now dispute which party must pay for Grogan's injuries. The court

No. 15-30369

below interpreted the parties' Master Service Contract to place this burden on W&T alone. We affirm.

I

W&T Offshore ("W&T") is a pipeline and platform operator in the Gulf of Mexico. In October 2011, it hired Triton Diving Services ("Triton") to participate in an offshore pipeline recommissioning project. The project required flushing the pipeline of impurities, which Triton accomplished by pumping fluids flushed from the pipeline to the TRITON ACHIEVER, a dive support vessel (DSV) that Triton captained, crewed, and operated. W&T provided detailed instructions for the filtering operation in a work order that Triton was obliged to follow pursuant to the Master Service Contract ("MSC") between Triton and W&T.

While Triton was performing this service, it detected potentially unsafe levels of hydrogen sulfide ("$H_2S$") being filtered out of the pipeline fluids and suspended its operations in accordance with its safety manual. Triton then consulted with a W&T facilities engineer, Alan Greig, who recommended that Triton hire Tiger Safety ("Tiger") to help resolve the $H_2S$ problem. A Triton representative made some of the arrangements with Tiger, and Greig also contacted Tiger to discuss the services it would provide, approve the equipment it would use, and confirm how much the services would cost W&T. Because Triton's work order with W&T would require W&T to pay "cost plus 10%" to Triton for any charges for third-party services not addressed in the work order, W&T opted to pay for Tiger's services directly. The contract and job tickets Tiger prepared for its work on the project listed W&T as "Customer" and were signed by W&T representatives.

Tiger personnel, including Jakarta Grogan, came aboard the ACHIEVER to provide $H_2S$ monitoring and safety training. Grogan testified that his job was to take samples when instructed to do so by W&T's

2

No. 15-30369

representative and to provide measurements to that representative.[1] The $H_2S$ problem was eventually resolved, and W&T decided to discharge Grogan and Tiger.

Shortly thereafter, Grogan fell on the deck of the ACHIEVER while attempting to board a personnel basket. He sued Triton and W&T in federal district court over the resulting injuries. W&T and Triton answered and filed cross-claims against each other for indemnity and defense of Grogan's claims. Under the MSC, W&T had agreed to indemnify Triton for personal injury claims brought by members of the "W&T Group," and Triton had agreed to indemnify W&T from personal injury claims brought by members of the "Contractor Group." The MSC defines these groups as follows:

> 1.1.2 "Contractor Group" shall mean: Contractor, its parent, subsidiary and affiliated companies, and their respective parents, subsidiary and affiliated companies, and all of their respective officers, directors, representatives, employees *and invitees on the Work sites* and insurers of all of the foregoing.
>
> 1.1.3 "W&T Group" shall mean: W&T, its parent, subsidiary and affiliated or related companies, its and their working interest owners, co-lessees, co-owners, partners, farmors, farmees, joint operators, and joint venturers, if any, and all of their respective officers, directors, representatives, employees *and invitees on the Work sites* and insurers of all of the foregoing.[2]

Each side claimed a right to indemnification under these provisions.[3] W&T claimed that Grogan was Triton's invitee or, in the alternative, that he

---

[1] More generally, although a W&T representative on the ACHIEVER monitored Tiger's activities, Tiger personnel were directed by Triton personnel with respect to where they were allowed to go on board the vessel and where they were allowed to set up equipment.

[2] Emphases added.

[3] Each side also seeks its defense costs from the other.

3

No. 15-30369

was an invitee of both Triton and W&T.[4] Triton argued that Grogan was W&T's invitee alone. The parties agreed to a bench trial on this issue.[5]

The district court sided with Triton. It rejected W&T's argument that a "dual invitee" situation existed. Rather, it found, ""[b]ased on the facts of [the] case," that Grogan was W&T's invitee, and "decline[d] the invitation to find Triton a 'co-invitor.'" In turn, it concluded that W&T owed Triton indemnity. W&T appealed.

## II

"Interpretation of the terms of a contract, including an indemnity clause, is a matter of law, reviewable *de novo* on appeal."[6] However, "[a] district court's factual findings, including those on which the court based its legal conclusions, are reviewed for clear error."[7] "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court based on all of the evidence is left with the definite and firm conviction that a mistake has been committed."[8]

We use the six-factor framework set forth in *Davis & Sons, Inc. v. Gulf Oil Corp.* to determine whether federal maritime law, rather than state law,

---

[4] Pursuant to stipulations between the two parties, if both W&T and Triton were found to have invited Grogan, then liability would be allocated 63% to Triton and 37% to W&T. Because each party funded half of the settlement with Grogan, such a finding would obligate Triton to reimburse W&T for the amount it overpaid.

[5] With the consent of both parties, the district court used only the briefs and summary judgment record in the case to reach its ruling.

[6] *Offshore Marine Contractors, Inc. v. Palm Energy Offshore, L.L.C.*, 779 F.3d 345, 348 (5th Cir. 2015) (quoting *Duval v. N. Assur. Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013)); *see Luhr Bros., Inc. v. Crystal Shipowning, PTE. Ltd. (In re Luhr Bros., Inc.)*, 325 F.3d 681, 684 (5th Cir. 2003) (specifically addressing bench trials in admiralty actions).

[7] *Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (quoting *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 538 (5th Cir. 2009)); *see Luhr Bros.*, 325 F.3d at 684.

[8] *Luhr Bros.*, 325 F.3d at 684 (quoting *Walker v. Braus*, 995 F.2d 77, 80 (5th Cir. 1993)).

applies to the interpretation and application of a contract.[9] Here, the district court correctly ruled that the MSC is a maritime contract under that framework, a conclusion the parties do not dispute.

"A maritime contract containing an indemnity agreement . . . should be read as a whole and its words given their plain meaning unless the provision is ambiguous."[10] In this case, the district court's interpretation of the MSC turned on the definition of the word "invitee." The MSC itself does not define this term. When a maritime contract uses but does not define "invitee," courts in this circuit apply the definition articulated in *Blanks v. Murco Drilling Corp.*[11] In that case, drawing on Louisiana law, we defined "invitee" as "a person who goes onto premises with the expressed or implied invitation of the occupant, on business of the occupant or for their mutual advantage."[12] The court below used the *Blanks* definition without objection from either party.

### III

We first consider the district court's determination that Grogan was W&T's invitee. The court found that "W&T satisfies all of the elements necessary to be Tiger's [and therefore Grogan's] invitor." On appeal, W&T disputes only the finding, made as part of the court's *Blanks* analysis, that W&T was an occupant of the ACHIEVER. W&T objects that it did not "charter,

---

[9] 919 F.2d 313, 316 (5th Cir. 1990); *see generally id.* ("What constitutes maritime character is not determinable by rubric. The Supreme Court has resorted to the observation that a contract is maritime if it has a 'genuinely salty flavor.'") (quoting *Kossick v. United Fruit Co.*, 365 U.S. 731, 742 (1961)).

[10] *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 834 (5th Cir. 1992) (quoting *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 955 (5th Cir. 1984)).

[11] *See, e.g.*, *Brown v. Sea Mar Mgmt., LLC*, 288 F. App'x 922, 924 (5th Cir. 2008) (unpublished); *Alex v. Wild Well Control, Inc.*, No. 07-9183, 2009 WL 2599782, at *9 (E.D. La. Aug. 18, 2009) ("When a contract does not specifically define 'invitee,' courts adopt the *Blanks* definition."); *Clayton Williams Energy, Inc. v. Nat'l Union Fire Ins. Co. of La.*, No. 03-2980, 2004 WL 2452780, at *5 (E.D. La. Nov. 1 2004), aff'd, 161 F. App'x 378 (5th Cir. 2006); *Reynaud v. Rowan Companies, Inc.*, No. 98-1326, 1999 WL 65022, at *3 (E.D. La. Feb. 5, 1999).

[12] 766 F.2d 891, 894 (5th Cir. 1985).

man, or operate the vessel" and that Triton was an "independent contractor" according to the MSC.

These objections, whether right or wrong, are not dispositive. The MSC does not define the term "occupant" for purposes of determining invitee status, nor does *Blanks* or any other published case from our court. However, in an unpublished case, we applied "the customary meaning of 'occupant,'" namely, "'[o]ne who has possessory rights in, or control over, certain property or premises.'"[13] The district court found that W&T occupied the ACHIEVER because "[w]hile [Triton's] crew . . . retained control over decisions related to the safe operation of the vessel . . . the direction, command, and control of the vessel as it pertained to the work on the pipeline recommissioning project itself came from W&T or its company representative."

W&T claims this finding lacks support in the record. We disagree. The record indicates that Triton did what W&T paid it to do pursuant to the MSC and an ensuing work order. The work order incorporated documents that provided detailed instructions for every step of Triton's work on recommissioning the pipeline and specified when and where Triton's vessel was to be "mobilize[d]," "relocate[d]," and "demobilized." Under the MSC, Triton warranted that "all Work provided by [Triton] hereunder will conform, in all particulars, to the specifications set forth in the relevant Order," and it agreed that "in the event [Triton's] Work fails to conform to said specifications, W&T may . . . direct [Triton] to repair, replace or re-accomplish (as applicable) the non-conforming Work." Moreover, although the ACHIEVER's crew mostly consisted of Triton employees and invitees, a W&T consultant was on board for much of the time that Triton's was performing work for W&T.

---

[13] *Brown v. Sea Mar Mgmt.*, LLC, 288 F. App'x 922, 925 (5th Cir. 2008) (quoting BLACK'S LAW DICTIONARY 1108 (8th ed. 2004)).

No. 15-30369

Given this evidence, we cannot conclude that the district court clearly erred in determining that W&T occupied the ACHIEVER. W&T does not claim that the district court otherwise erred in applying *Blanks* to it, and we find no other error. The district court correctly determined that Grogan was W&T's invitee.

IV

We next consider the district court's determination that Grogan was *not* Triton's invitee. W&T argues that this determination arose purely from a misreading of the MSC. According to W&T, the district court erroneously held that a "dual invitee" situation could not exist under the MSC. Accordingly, once the district court determined W&T invited Grogan, it concluded that Grogan could not have been Triton's invitee by simple operation of the contract. In W&T's telling, then, the district court's finding as to Triton was not factual in nature and is entitled to no deference. Triton disputes W&T's reading of the opinion below. We find W&T's reading plausible,[14] but see no need to resolve this debate. Nor need we determine whether the MSC admits the possibility of a "dual invitee" situation. Even if the district court believed it could not deem Triton an invitor because it had already deemed W&T an invitor, and even if

---

[14] The district court repeatedly suggested that it could not deem Triton an invitor because it had already deemed W&T an invitor: "*Having found* that W&T satisfies all of the elements necessary to be Tiger's invitor, this Court declines the invitation to find Triton a "co-invitor." . . . The Court finds that it would be absurd to conclude that . . . there are two invitors since this would eviscerate the indemnity provisions of a contract like the one in this case . . . . *Accordingly*, the Court concludes that Grogan was not the invitee of both Triton and W&T. . . . Based on the facts of this case, the Court concludes that Tiger was W&T's invitee, and therefore, that Grogan, Tiger's employee, was a member of the W&T Group. *Having reached this conclusion*, it is the ruling of this Court that W&T owes Triton indemnity for its defense costs and the amounts paid in settlement of Grogan's claims." (Emphases added.) On the other hand, the court observed that "the facts in [another Fifth Circuit case] are analogous to the facts found by this Court to conclude that a 'dual invitor' situation simply did not exist" and that "most cases that have analyzed the concept of invitee status have facts in common with the facts of this case, which when taken together, militate in favor of finding W&T to be the invitor."

this belief resulted from a misinterpretation of the MSC, the district court still found facts sufficient to sustain its holding that Grogan was not Triton's invitee.[15]

The district court found that Triton did not induce Tiger's and Grogan's participation in W&T's project. Rather, although Triton "coordinate[d] logistics" with Tiger and "impliedly consented to Tiger working from the [ACHIEVER]," "it was W&T . . . that directly contracted with Tiger for a specific scope of work, funded and directed all of Tiger's work, and was the entity that explicitly invited Tiger to work on the 'overall' pipeline recommissioning project." The conduct of the parties over the course of the project further demonstrated that W&T was ultimately responsible for Tiger's presence and that of its employees. "Tiger's operations manager, David Lacombe, considered his customer to be W&T, and he corresponded directly with [W&T's project manager Alan] Greig when changes were made to the number of Tiger personnel or regarding the return of equipment." Tiger and Grogan were subject to the "oversight and project management of . . . Greig . . . and his on-site representatives"; W&T representatives "gave Grogan his day-to-day instructions," approved his work tickets, and decided when he would be sent back to shore.

Under the *Blanks* standard, these facts justify the district court's conclusion that Grogan was not Triton's invitee. *Blanks* presented closely

---

[15] *See Bickford v. Int'l Speedway Corp.*, 654 F.2d 1028, 1031 (5th Cir. Unit B 1981) ("[R]eversal is inappropriate if the ruling of the district court can be affirmed on any grounds, regardless of whether those grounds were used by the district court."). To be clear: we do not reach the issue of whether W&T accurately characterizes the district court's reasoning, nor do we determine whether the MSC allows a "dual invitee" situation. We note, however, that even if the district court had erroneously rejected the possibility of a "dual invitee," this may not have affected its result. In *Blanks*, the contract at issue explicitly contemplated and allocated liability in case of a "dual invitee" situation; nevertheless, we held, on similar facts, that only the party analogous to W&T could be considered an invitor. 766 F.2d at 893-94.

analogous facts, and in that case, we declined to extend invitor status to the party in Triton's position. In *Blanks*, a well operator, ANR, hired a service company, Murco. ANR and Murco each indemnified the other for claims brought by the other's invitees. ANR also hired a subcontractor, Consolidated, to work on the same project. Consolidated's employee, Blanks, was injured while assisting a Murco employee on Murco's rig. We held that Blanks was ANR's invitee alone, and emphasized that he "was invited onto the drilling site by ANR through his employee status with Consolidated and was there performing services for ANR's benefit."[16] Our analysis in *Blanks* thus focused on the party ultimately responsible for the invitee's presence.[17] In this case, that party was W&T, not Triton.

In disputing the district court's *Blanks* analysis as to Triton, W&T focuses solely on the court's observation that "the presence of $H_2S$ did not preclude the operation of Triton's vessel . . . . The vessel could have been reassigned to another job where there was no $H_2S$ threat." In the district court's view, this showed that "W&T was the party that stood to benefit from Tiger's $H_2S$ services." W&T argues that the record is devoid of evidence of "another job" available to Triton and that the court's invitee determination as to Triton was therefore clearly erroneous.

Again, we disagree. The district court's "another job" hypothetical merely illustrates the undeniable nature of the parties' relationship: W&T's project was the ultimate reason for Triton and Tiger's presence on the work site, and

---

[16] *Blanks*, 766 F.2d at 894. We also pointed out that "[a]lthough there was no written contract between ANR and Consolidated, Consolidated was clearly working directly for ANR . . . . Weekly reports and service tickets for Consolidated's services were signed by an on-site representative of ANR. Consolidated's invoices were presented to ANR for payment." *Id.* at 893.

[17] *See also id.* ("[I]nvitee status is determined by who invites the injured party onto the premises.").

No. 15-30369

any benefit to Triton from Tiger's presence was indirect. Under our case law, a contractor may incidentally benefit from the presence of a subcontractor without having invited the subcontractor onto the project for purposes of liability.[18] Such was the case here. As the district court explained, although Tiger's presence may have indirectly benefited Triton, it was *crucial* for W&T: "The [ACHIEVER] could have been reassigned to another job where there was no $H_2S$ threat, but W&T's project could not move forward at all until the $H_2S$ situation was addressed." The district court did not err in reasoning that this fact, alongside others, was consistent with a finding that Grogan and Tiger were not Triton's invitees.

V

The district court properly determined that Grogan was W&T's invitee. Moreover, its valid factual findings compel the conclusion that Grogan was not Triton's invitee. The district court was therefore correct to hold W&T liable under the MSC for Triton's settlement and defense costs related to Grogan's claims. We AFFIRM the ruling of the district court.

---

[18] In *Blanks*, the injured party, Blanks, was found to be ANR's invitee, and not Murco's, even though he was assisting Murco's employee on Murco's rig at the time he was injured. *See* 766 F.2d at 893-95.

10